Geore Gowen as LIMITED ANCILLARY ADMINISTRATOR OF THE ESTATE OF OSCAR STETTINER, Plaintiff,

against
Helly Nahmad Gallery, Inc., DAVID NAHMAD, HELLY NAHMAD, INTERNATIONAL ART CENTER, S.A., Defendants.


650646/2014

Attorneys for Plaintiffs:
Landrigan and Aurnou, LLP. 
235 Mamaroneck Avenue, Suite 201
White Plains, N.Y.
Joel M. Aurnou, Esq.
Phillip C. Landrigan, Esq.
Attorneys for Defendant:
Aaron Richard Golub, Esquire, P.C. 
35 East 64th St, Suite 4A
New York, NY 10065
Nehemiah S. Glanc, Esq.
Aaron Richard Golub, Esq.
Russell I. Zwerin, Esq.


Eileen Bransten, J.

Defendants move to dismiss the complaint based upon CPLR 3211(a)(1), CPLR 3211(a)(2), CPLR 3211(a)(3), CPLR 3211(a)(4), CPLR 3211(a)(5), CPLR 3211(a)(7), CPLR 3211(a)(8), CPLR 3211(a)(10), CPLR 327 (forum non conveniens), CPLR 1001 and 1003, CPLR 3025, and CPLR 306-b.
Defendants further move to have this court take judicial notice of foreign laws pursuant to CPLR 4511.
I. Background[FN1]

This is a case involving Amadeo Modigliani's Seated Man with a Cane, 1918 ("the Painting"), a painting that was allegedly taken by the Nazis and was lost for over a half-century. See Amen. Comp. ¶¶1, 3, 34-58. This action is brought by George Gowen as the Ancillary Administrator for the Estate of Oscar Stettiner, the original owner of the painting. Id at ¶4.
A. Historical Background
Oscar Stettiner was a Jewish art dealer who both lived and worked in Paris, France in the 1930's. Amen. Comp. ¶38. The Painting was part of Oscar Stettiner's private collection. Id at ¶¶ 38-40. 
Commencing in 1933 and lasting until their defeat in 1945, the Nazi Reich enacted laws which confiscated the possessions of Jewish persons in occupied territory. Amen. Comp. ¶¶ 34-37. In 1939, as the Nazi's advanced toward France, Oscar Stettiner fled his Paris home, leaving behind many possessions, including the Painting. Id at ¶42. He took up residence at a home he owned in La Force, Dordogne, France, this area remained unoccupied by the Nazis through the end of World War II. Id at ¶43.
During the period of the Nazi occupation of Paris, possessions which had belonged to Jewish individuals were assigned to a Temporary Administrator for auction. Amen. Comp at ¶¶ 47, 48. Oscar Stettiner's property, including the Painting, was taken into custody by Marcel Philippon who was appointed to be the Temporary Minister of Oscar Stettiner's Parisian Estate. Id at ¶49. Marcel Philippon held four public auctions in 1943 and 1944; the Painting was sold at one of these auctions on July 3, 1944. Amen. Comp. at ¶¶ 50-51.
In 1946, forced sales of property by the Nazi regime were declared null and void; Oscar Stettiner is alleged to have obtained an order granting the return of the Painting from the courts of France on July 31, 1946. Id at ¶52. Subsequent to obtaining that Order Oscar Stettiner, and his heirs, attempted to locate the Painting to no avail. Id at ¶¶ 57—58. In 1948, Oscar Stettiner died at his home in La Force, leaving behind a wife and two children without having discovered the location of the Painting.[FN2]
 Id at ¶¶ 43, 44.
B. The Elusiveness of the Painting and Ownership by IAC
In 1930, Oscar Stettiner exhibited the Painting at the Venice Biennale.[FN3]
 The evidence of ownership as catalogued by the Venice Bienale provides the basis for Stettiner's claim of title to the Painting. See id at ¶58. Despite the reasonable efforts of Oscar Stettiner and his heirs to locate the Painting, it eluded them for years. Amen. Comp. ¶57-58 During a 1996 auction at Christies in London, the Painting was misidentified as being a different painting, with an owner other than Stettiner, where it was bought by Defendant International Art Center. See id. at ¶59. At the 1996 auction, the Painting was identified as having been sold by an Anoynmous seller between 1940 and 1945 to a J. Livengood in Paris and "thence by descent to the present owners". Amen. Comp. ¶62.
C. Discovery of the Painting by Oscar Stettiner's Heir
Between 2005-2006, the Defendants exhibited the painting at Defendant Helly Nahmad Gallery. In 2008, the Painting was offered at auction at Sotheby's in New York City. Id at ¶¶64-67. After failing to sell the Painting at the 2008 auction, Defendants purportedly moved the painting to a warehouse in Switzerland.[FN4]
 See id at ¶70. On February 28, 2011, and again on March 29, 2011, Phillippe Maestracci, a French resident and sole heir to the Estate of Oscar Stettiner, wrote the Defendants through counsel demanding the return of the Painting. See id ¶72-73. The Defendants did not respond to this demand. Id at ¶74. Thereafter, Philippe Maestracci commenced an action in the Southern District of New York for the return of the Painting. Id at ¶75. It was during the discovery phase of the federal action that International Art Center was revealed to be the owner of the Painting, jeopardizing diversity jurisdiction. Id at ¶76. Maestracci then withdrew the federal action without prejudice. Id at ¶78. In 2014, the Plaintiff commenced the present action seeking the return of the Painting. Id at ¶¶79-80.
II. Discussion
Given the complexity of the issues involved in this decision the court has subdivided this opinion into a number of sections. Section A addresses the general legal standards of a motion to dismiss pursuant to CPLR 3211 and, given the extensive documentary evidence submitted by both parties, the heightened standards of CPLR 3211(a)(1). Section B of this decision addresses [*2]Defendants' argument that there is no personal jurisdiction over Defendants Davide Nahmad and International Art Center pursuant to CPLR 3211(a)(8). Section C examines the amendment of the complaint without first seeking leave of the court. Section D discusses the Defendants' argument that there is no subject matter jurisdiction over the Painting pursuant to CPLR 3211(a)(2). Section E addresses a later filed turnover proceeding, pending before the Surrogate Court of New York County, wherein Plaintiff George Gowen, in his capacity as limited ancillary administrator of the estate of Oscar Stettiner, and Defendant International Art Center are also parties. Section F discusses the Defendants argument that there are missing, necessary parties, pursuant to CPLR 3211(a)(10). Section G addresses a related argument made by the Defendants that the Plaintiff lacks capacity to assert claims under CPLR 3211(a)(3). Section H then examines the general argument that the Plaintiff has failed to state claims for Declaratory Judgment, Conversion, and Replevin under CPLR 3211(a)(7). Section I discusses the applicable statute of limitations. Section J addresses the Defendants' foreign affairs arguments including the Act of State Doctrine, the principle of international comity, the conflict of laws, and the effect of judicially noticing foreign law pursuant to CPLR 4511. Section K examines the Defendants' argument that New York is an inconvenient forum. Last of all, Section L addresses the Defendants' arguments raised under the doctrine of champerty.
A. Legal Standards of CPLR 3211[FN5]

The Court, recognizing the multiple provisions under CPLR 3211 by which the Defendants seek dismissal, notes that the general legal standard of a motion to dismiss brought under CPLR 3211 is to afford the pleading a liberal construction, accepting the facts as alleged to be true, and according the Plaintiff the benefit of every possible favorable inference. See Leon v. Martinez, 84 NY2d 83, 87-88 (1994). Under CPLR 3211(a)(1), even where documentary evidence seems to controvert the pleadings, dismissal is warranted only where that documentary evidence conclusively establishes a defense to the asserted claims as a matter of law. Id. (emphasis added). The caveat to this treatment, however, is that the allegations can neither consist of bare legal conclusions, nor can the factual claims be flatly contradicted by documentary evidence. See Myers v. Schneiderman, 30 NY3d 1, 11 (2017) reargument denied, 30 NY3d 1009 (2017) citing Simkin v Blank, 19 NY3d 46, 52 (2012).
These standards, which govern the favorable treatment given to the complaint, underlie this Court's consideration as to each of the Defendants' arguments. Given the vast number of exhibits proffered by both parties, and the need to address this documentary evidence throughout, this Court also considers the standard set forth under CPLR 3211(a)(1), wherein documentary evidence conclusively establishes a defense as a matter of law, to underlie each of its considerations. 
B. CPLR 3211(a)(8) — Personal Jurisdiction over the Defendants[FN6]

Defendants International Art Center and Davide Nahmad argue that this court lacks personal jurisdiction over them as they are neither residents nor domiciliaries of New York nor [*3]have they conducted business in New York sufficient to establish personal jurisdiction over them. Defendant Davide Nahmad, in particular, states he does not have a residence in New York, does not conduct business in New York, and was not served properly through an affidavit. The court initially notes that this is not conclusive documentary evidence warranting dismissal under CPLR 3211(a)(1). See generally David Nahmad Aff; see also Tsimerman v. Janoff, 40 AD3d 242, 242-243 (1st Dep't 2007) (holding affidavits do not constitute conclusive documentary evidence).
Personal jurisdiction is conveyed over a Defendant under CPLR 302. Here Plaintiff argues that CPLR 302(a)(1) conveys personal jurisdiction over the Defendants by virtue of their conducting business in the state of New York. Plaintiff further argues that, under CPLR 302(a)(2), personal jurisdiction is also acquired over the Defendants through their committing a tortious act in the state of New York.
As to Defendant Davide Nahmad, specifically, the Plaintiff argues that personal jurisdiction is acquired by and through alleged alter egos, Defendants International Art Center and Helly Nahmad Galleries. See Amen. Comp. ¶18-21. Aurnou 2018 Affirm. Ex. 12 (NYSCEF Doc. No. 1620) (Sotheby's Email); Aurnou 2016 Affirm ¶¶33-35 (NYSCEF Doc. Nos. 1621 and 1655) (also annexed to the 2018 affirmation as Ex. 13); Aurnou 2018 Affirm. Ex. 24 (NYSCEF Doc. No. 1633) (a New York Times article quoting David Nahmad as having said "the International Art Center is me personally" . . . "it's David Nahmad").
In answering the question of personal jurisdiction, this Court will first address the issue of whether it has acquired personal jurisdiction over Defendant International Art Center. The Court will next address the issue of whether the Plaintiff has sufficiently pleaded whether International Art Center can be construed to be merely the alter ego of Davide Nahmad such that personal jurisdiction would be extended to them. The Court will then turn to the Plaintiff's second allegation of alter ego, namely whether Davide Nahmad or International Art Center could be construed to be alter egos of Defendant Helly Nahmad Gallery, Inc., a New York corporation.
i. Personal Jurisdiction over Defendant International Art Center
As it concerned a related action before the Surrogate Court of New York County, the Appellate Division, First Department, stated "a court may exercise personal jurisdiction over any nondomiciliary who, in person or through an agent, transacts any business within the state or contracts anywhere to supply goods or services in the state or commits a tortious act within the state or regularly does or solicits business or engages in any other persistent course of conduct. The commission of some single or occasional acts of an agent in a state may be enough to subject a corporation to specific jurisdiction in that state with respect to suits relating to that in-state activity." Estate of Stettiner, 148 AD3d 184, 192 (1st Dep't 2017), leave to appeal denied sub nom. Matter of Estate of Stettiner, 30 NY3d 907 (2017) (emphasis added). The appellate division found that personal jurisdiction existed over International Art Center by virtue of its having offered the Painting for sale at Sotheby's. See id at 192. The Appellate Division also found a basis for personal jurisdiction which may have been based on the allegations that "IAC transacted business in New York through the Nahmads at the gallery's office in [*4]Manhattan". Id.
This Court acknowledges the Appellate Division's determination that there is personal jurisdiction over the International Art Center in the related probate matter and, independent of the Surrogate's Court, holds that personal jurisdiction is acquired against Defendant IAC under two grounds.
Plaintiff first alleges that Defendant IAC transacts business in New York by and through Defendant Helly Nahmad and Helly Nahmad Gallery. See Amen. Comp. ¶¶17-19, 21 (alleging that the Helly Nahmad Gallery sells pieces of art of which Defendant IAC is the title holder). Under this theory of engaging the Helly Nahmad Gallery to sell artwork owned by IAC, jurisdiction is proper under CPLR 302(a)(1) where Defendant IAC has transacted business by and through its agents.
Plaintiff next alleges that after the painting was exhibited at the Nahmads' gallery, and placed into New York's stream of commerce for auction, Oscar Stettiner's heir, Phillippe Maestracci, made a demand in New York for the Painting's return. See Amen Comp. ¶¶71-78. "[A] demand consists of an assertion that one is the owner of the property and that the one upon whom the demand is made has no rights in it other than allowed by the demander." See Feld v. Feld, 279 AD2d 393, 394-95 (1st Dep't 2001). This demand went unanswered which, under New York's law, gives rise to a cause of action such that personal jurisdiction would be acquired pursuant to CPLR 302(a)(2). See id. (noting that a refusal need not specifically use the word "refuse"); see also Solomon R. Guggenheim Foundation v. Lubell, 77 NY2d 311, 316-317 (1991) (stating that, under New York Law if stolen property was sold to a good faith purchaser, a cause of action accrues when the owner of the stolen property makes a demand upon that purchaser for the return of that property); see also Estate of Stettiner, 148 AD3d at 191 (noting that an estate's assets can include a cause of action which arose in New York); Maestracci v. Helly Nahmad Gallery, Inc., 155 AD3d 401, 405 (1st Dep't 2017) (noting the earliest time Maestracci became aware of Defendant IAC as the title holder to the Painting was after the ownership interest was revealed during the discovery phase of the prior federal action). As a result, personal jurisdiction is acquired over Defendant International Art Center under the theory that it has committed tortious conduct in the State of New York.
For the foregoing reasons, personal jurisdiction has been acquired over Defendant IAC under CPLR 302 by and through it's having conducted business in the state of New York and by the allegation that it has committed tortious conduct in the state of New York.
ii. Alter Ego as a Basis for Personal Jurisdiction over Davide Nahmad
Plaintiff alleges Defendant International Art Center is actually the alter ego of Defendant Davide Nahmad. In order to state a basis for alleging an alter ego such that the court can pierce the corporate veil, the complaining party must "establish that the owners of the entity, through their domination of it, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against the party asserting the claim [*5]such that a court in equity will intervene." See Tap Holdings, LLC v. Orix Finance Corp., 109 AD3d 167, 174 (1st Dep't, 2013) citing Morris v. NY State Dep't of Taxation & Fin., 82 NY2d 135 (1993); see also Baby Phat Holding Co., LLC v. Kellwood Co., 123 AD3d 405, 407 (2014) (noting that stating a claim under a theory of alter ego requires a demonstration of complete domination with respect to the transaction attacked). 
In determining whether the corporation was completely dominated by another, the Court may consider factors such as "the disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the alleged dominated corporation; whether the corporations are treated as independent profit centers; and the payment or guarantee of the corporation's debts by the dominating entity . . . [n]o one factor is dispositive." Tap Holdings, LLC, 109 AD3d at 174.
In support of its contention that Defendant Davide Nahmad is the alter ego of IAC, Plaintiff has pleaded a number of facts supported by documentary evidence. These include the following:
1) Defendant, Davide Nahmad, is the principal of Defendant IAC. See Amen. Comp. ¶21(a); see also Amen. Comp. Exs. 7-8 (exhibit 7 is an article by WealthX, Exhibit 8 is a New York Times Article).
2) Davide Nahmad holds all of the shares of stock in Defendant International Art Center. See Aurnou 2016 Affirm Ex. 12 (NYSCEF Doc. 1667) (a Panamanian Stock Certificate stating Defendant IAC has 100 shares of stock and issuing all 100 shares of stock to Defendant Davide Nahmad).
3) Plaintiff believes Defendant IAC was formed by a law firm which has garnered a reputation for creating "shell corporations". See Amen. Comp. ¶21(c); see also Amen. Comp. Ex. 9 (a news article captioned "A Law Firm that Works with Oligarchs, Money Launderers, and Dictators) (emphasis added).
4) Plaintiff alleges that Defendant Davide Nahmad has used Defendant International Art Center to conceal his name, and thus the name of the owner of the Paintings, to perpetuate a wrong. See e.g. Aurnou 2018 Affirm. Ex. 24 (NYSCEF Doc. No. 1633) (a New York Times article quoting David Nahmad as having said "the International Art Center is me personally" . . . "it's David Nahmad").
5) Plaintiff also has a good faith belief that Defendant IAC fails to adhere to corporate formalities such as keeping regular books and records, fails to generate income, and fails to have an independent board of directors. See Amen. Comp. ¶21; see also Amen Comp. Exs. 7-8; Aurnou 2016 Affirm Ex. 12 (NYSCEF Doc. 1667) (a Panamanian Stock Certificate stating Defendant IAC has 100 shares of stock and issuing all 100 shares of stock to Defendant Davide Nahmad); Aurnou 2016 Affirm Ex. 13 (NSCEF Doc. No. 1668) (a letter exclusively signed by Defendant [*6]Davide Nahmad to the board of directors of International Art Center purporting to revoke powers of attorney to conduct corporate business).
6) Defendant Davide Nahmad is alleged to have placed paintings owned by IAC into New York's Stream of Commerce prior to the Painting at issue. See Amen. Comp. ¶¶ 23-26 (noting sales and profits of Paintings purportedly owned by IAC are given to Defendant Davide Nahmad, that Davide Nahmad has held himself out to be the owner of Paintings, and that purchases and sales of IAC's art have been orchestrated by Defendant Davide Nahmad); see also Aurnou 2018 Affirm. Ex. 24 (NYSCEF Doc. No. 1633).
7) Defendant International Art Center is alleged to be underfunded such that the Plaintiff would be unable to recover reasonable costs if he were to be successful on a claim. See Amen. Comp. ¶¶20-21, 23.
8) The Painting at issue is alleged to be held in Switzerland, but it is unclear under whose name the Painting is held. See e.g. Amen. Comp. ¶¶15, 19-20 (noting that Defendant Davide Nahmad conducts business on behalf of Defendatn IAC); Amen. Comp. ¶70 (noting the Painting is believed to have been moved to a Swiss bank account under David Nahmad's, or the other Defendants', names); Aurnou 2018 Affirm Ex. 24 (NYSCEF Doc. No. 1633) (a New York Times article quoting David Nahmad as having said "the International Art Center is me personally" . . . "it's David Nahmad").
Under these grounds, the Court finds that it has acquired personal jurisdiction, pursuant to CPLR 302(a)(1), over Defendant Davide Nahmad by and through his conducting business vis-à-vis Defendant IAC and, in so doing, so perverting its corporate form such that this court cannot determine a substantial difference between the two Defendants. The Court also finds that it has acquired personal jurisdiction, pursuant to CPLR 302(a)(2), over Defendant Davide Nahmad by and through his alter ego, Defendant IAC, in committing tortious conduct in the State of New York for failure to respond to the demand for the Painting. See Solomon R. Guggenheim Foundation v. Lubell, 77 NY2d 311, 316-317 (1991).
iii. Alter Ego of Helly Nahmad Gallery
Defendant Davide Nahmad and Defendant IAC are also alleged to be the alter egos of the Helly Nahmad Defendants. See Amen. Comp. ¶¶11-33. In support of this premise, Plaintiff has supplied an unverified letter, dated October 13, 2016 purporting to revoke General Powers of Attorney, presumptively granted under Panamanian law, issued to persons by the name of Ezra and Hillal Nahmad over Defendant International Art Center. See Aurnou 2016 Affirm. Ex. 13 (NYSCEF Doc. No. 1668). The Helly Nahmad Defendants are alleged to have sold paintings belonging to Defendants IAC/Davide Nahmad, and split those profits with Defendant Davide Nahmad. See Amen. Comp. ¶¶15, 17, 20, 22, 23, 24, 30 (noting that artwork is purportedly "consigned to Helly Nahmad [*7]Gallery" and that profits of any sale are distributed between the Defendants). Defendant Davide Nahmad is alleged to have an interest in the Helly Nahmad Gallery. See id at ¶¶15-33. Plaintiff argues that this use of the Helly Nahmad Gallery to sell Davide Nahmad's and International Art Center's artworks, coupled with control over business operations, and the ability of the Helly Nahmad Defendants to choose which paintings Defendant IAC sells are sufficient to establish an alter ego. See id at ¶¶24-33 (alleging the Helly Nahmad art gallery to merely be a vehicle for selling Davide Nahmad's artworks and utterly being under the control of Defendant Davide Nahmad).
Defendant Helly Nahmad and the Helly Nahmad Gallery counter this allegation with an affidavit containing corporate formation documents for both the Helly Nahmad Gallery and its' predecessor, Davla Gallery, which indicate that Davide Nahmad had no ownership interest in either at their formation. See Helly Nahmad Aff. Exs. 2-3 (indicating corporate formation documents for both Davla Gallery and the Helly Nahmad Gallery). Defendants' use of documents indicating that Davide Nahmad was not an initial member of the Helly Nahmad Gallery fail to conclusively establish whether Davide Nahmad had any type of owner or membership interest in the Helly Nahmad Gallery after its formation. See Leon v. Martinez, 84 NY2d 83, 87-88 (1994) (noting that under CPLR 3211(a)(1) documentary evidence must be conclusive). The remainder of the Helly Nahmad Affidavit is self-serving and does not meet the CPLR 3211(a)(1) standard. See Tsimerman v. Janoff, 40 AD3d 242, 242-243 (1st Dep't 2007). Further, the existence of the letter revoking powers of attorney over International Art Center to individuals by the name of Ezra and Hillal Nahmad in 2016 may indicate that members of the Helly Nahmad Gallery had powers over Defendant IAC such that it would have perverted its corporate form so as to render the Helly Nahmad and IAC Defendants indistinguishable. See e.g. Aurnou 2016 Affirm. Ex. 13 (NYSCEF Doc. No. 1668).
On this basis, however, it is too early to tell whether the Helly Nahmad Defendants function as a third cog in this alter ego relationship. That is a question to be unearthed in discovery. While this court declines to rule on the issue of personal jurisdiction by residence of either Defendant IAC or Defendant Davide Nahmad at this time, the court does note that if discovery reveals pertinent information such that it can be determined Helly Nahmad Gallery is also an alter ego of Davide Nahmad and IAC, that provides another basis for jurisdiction under CPLR 302(4) where New York is the residence of the parties.
C. Amendment of the Complaint[FN7]

Defendants argue that the Complaint was amended without leave of the court, and therefore must be dismissed. Generally, leave to amend a pleading is freely given, absent prejudice or surprise resulting directly from the delay. See Eighth Ave. Garage Corp. v. H.K.L. Realty Corp., 60 AD3d 404, 405 (1st Dep't 2009). Where a court concludes an application to amend clearly lacks merit, however, leave is properly denied. See id.
In an Order Dated September 22, 2015 this Court dismissed the Complaint against Defendants Davide Nahmad and International Art Center for lack of personal jurisdiction and improper service. See Order Dated September 22, 2015 at Tr. 13:25-14:1 (Alan F. Bowen, OCR) [*8](September 16, 2015). The dismissal was granted without prejudice. See id; see also 420 E. Assocs. v. Estate of Lennon, 225 AD2d 326, 326 (1st Dep't 1996) (noting that an order which is silent as to whether it is made with or without prejudice is deemed to have been made without prejudice).
The court did, however, grant leave to amend solely to substitute Philippe Maestracci as the Plaintiff in this action with Plaintiff George Gowen in his capacity as limited ancillary administrator of the Estate of Oscar Stettiner. See Maestracci v. Helly Nahmad Gallery, Inc., 155 AD3d 401, 404 (1st Dep't 2017) (noting the Amendment did not prejudice the Defendants); see also this Court's Order dated March 19, 2016 (noting "Gowen [was] granted leave to file an amended complaint naming himself as Plaintiff in this action. Accordingly, the Plaintiffs correctly removed Maestracci and included only Gowen as Plaintiff in this action").
In amending the complaint, however, the new Plaintiff, George Gowen, added additional facts pertaining to Defendants Davide Nahmad and International Art Center. See Amen. Comp. ¶¶11-33. This Amendment clearly went beyond the permission granted by this court in that it further clarified the basis for obtaining jurisdiction over Defendant Davide Nahmad and IAC. See this Court's Order dated March 19, 2016 (resolving Motion Seq. 009 to permit amendment of the caption). CPLR § 3025(a), however, provides that "a party may amend his pleading once without leave of court within twenty days after its service, or at any time before the period for responding to it expires, or within twenty days after service of a pleading responding to it." See CPLR §3025(a) (emphasis added). CPLR 3025(a) has been interpreted to include the time to amend the complaint as of right where a defendant has made a CPLR § 3211 motion to dismiss "since the defendant's motion to answer the complaint, also extended the plaintiff's time to amend the complaint." Dawley v. Town of Tyre, 43 Misc 3d 1222(A) (Sup. Ct. Seneca Cty, 2014) (Falvey, J.) citing Johnson v. Spence, 286 AD2d 481, 483 (2nd Dep't 2001); see also Weisel v. Provident Life & Casualty Insurance Co., 11 Misc 3d 1062(A) (Sup. Ct. NY Cty. 2006) (Gische J.); see also CPLR § 3211[f] (extending time to file an answer until ten days after the decision on a motion to dismiss).
The Defendants' rely upon Walden v. Nowinski, 63 AD2d 586 (1st Dep't 1978), for the proposition that failure to amend a pleading absent leave of the court voids the amended pleading. This reliance is misplaced given that the issue in Walden involved filing an amended answer without first seeking leave of the court. Id. (emphasis added). Despite the age of the instant matter, the Defendants have not yet filed an Answer. Therefore, pursuant to CPLR §3025(a), the amendment of the complaint is proper as of right.
D. Lack of Subject Matter Jurisdiction over Seated Man with a Cane [FN8]
 
Defendants argue that the absence of the Painting from New York precludes the Plaintiff from filing a claim in New York. See e.g. Matter of Obregon, 91 NY2d 591 (1998); Matter of Obregon, 230 AD2d 47 (1st Dep't 1997). Obregon, however, dealt with [*9]an issue not before this Court. See e.g. Estate of Stettiner, 148 AD3d at 189. In Obregon, the Court of Appeals determined whether the subject matter jurisdiction of the New York Surrogate's Court extended to "Cayman Islands assets of decedent, [who was] a Texas resident and Mexican domiciliary, when the issuance of ancillary letters of administration in New York [was] predicated solely on a small bank account in this State." See Matter of Obregon, 91 NY2d at 593. 
As noted by the Appellate Division in the related Surrogate matter, assets and property of an estate can include a cause of action arising in New York. See Estate of Stettiner, 148 AD3d at 191. The ability of the estate to maintain a cause of action against the Defendants in the present matter is not inconsistent with that holding.
Here, the Plaintiff argues that once a New York court has determined it has personal jurisdiction over a party, the Court can order property located outside New York to be turned over to a prevailing party. See Koehler v. Bank of Bermuda Ltd., 12 NY3d 533, 541 (2009) (holding that a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee). This argument mirrors an overarching principle of New York law that where there is personal jurisdiction over the parties, one party cannot hide its assets outside of New York state so as to render any judgment obtained in New York unenforceable. See e.g. Koehler v. Bank of Bermuda Ltd., 12 NY3d 533, 541 (2009) (holding that a court sitting in New York that has personal jurisdiction over a defendant can order the production of assets); Gryphon Domestic VI, LLC v. APP Int'l Finance Co., B.V., 41 AD3d 25, 31 (1st Dep't 2007) (noting a court can require the turnover of out of state assets); Miller v. Doniger, 28 AD3d 405, 405 (1st Dep't 2006) (requiring assets held in an out of state Wachovia account to be turned over to the Judgment creditor); Starbare II Partners, L.P. v. Sloan, 216 AD2d 238, 239 (1st Dep't 1995) (holding that where a court has personal jurisdiction over a party, it can order the turnover of "personal property" to satisfy a judgment).
Given that this Court has found personal jurisdiction over the Defendants is proper, the physical absence of Amadeo Modigliani's Seated Man with a Cane from the State of New York is of no consequence. See Supra Section B.
E. CPLR 3211(a)(4) — Action Pending Before the Surrogate's Court of New York County [FN9]

With regard to the related action pending before the Surrogate's Court of New York County, the Defendants move to dismiss that action, or to have the present action stayed pending a resolution of the Surrogate's Court action. From the outset, the Court notes that the present action was commenced in 2014. On March 2, 2015, IAC filed its petition in the New York County Surrogate's Court to revoke ancillary letters of probate granted to Gowen. See Estate of Stettiner, 148 AD3d 184 (1st Dep't 2017). This court declines to rule on the dismissal of the Surrogate's Court action as that matter is properly brought before the Surrogate. With regard to the request for a stay of the present action pending a resolution of the Surrogate action, the Defendant's relied upon authorities all [*10]support the premise that a dismissal is warranted where there is a prior pending action. See CPLR 3211(a)(4) (emphasis added). The Court finds the request for a stay unpersuasive and the Defendants' request is denied.
F. CPLR 3211(a)(10) — Absence of a Necessary Party[FN10]

Defendants argue that there are six heirs from the estates of Alphonse Stettiner, Oscar Stettiner, and Adele Stettiner who were shareholders in an art gallery, Stettiner et Cie. These heirs, the Defendants argue, are necessary parties to this action given that the Defendants claim the Painting may have been owned by Stettiner et Cie rather than Oscar Stettiner individually. Under CPLR 3211(a)(10) the absence of all heirs from the estates of Alphonse Stettiner and Adele Stettiner are grounds for dismissal. Under CPLR 1001(b) however:
If jurisdiction over [a necessary party] can be obtained only by his consent or appearance, the court, when justice requires, may allow the action to proceed without his being made a party. In determining whether to allow the action to proceed, the court shall consider: 1. whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder; 2. the prejudice which may accrue from the nonjoinder to the defendant or to the person not joined; 3. whether and by whom prejudice might have been avoided or may in the future be avoided; 4. the feasibility of a protective provision by order of the court or in the judgment; and 5. whether an effective judgment may be rendered in the absence of the person who is not joined. See Red Hook/Gowanus Chamber of Commerce v. New York City Bd. of Standards & Appeals, 5 NY3d 452, 465 (2005) citing CPLR §1001(b).
Here, the Defendants' extensive affidavits on foreign law note the Plaintiff may not have an adequate remedy under French or Swiss law. See Generally Simenot Aff.; see also Gautier Affirm. Ex. 7. Prejudice to the Defendant is minimal given that it can be determined that the Estate of Oscar Stettiner suffered a harm either by virtue of its being a party in interest to Stettiner et Cie, or, by virtue of Oscar Stettiner's individual ownership of the Painting. See Red Hook/Gowanus Chamber of Commerce v. New York City Bd. of Standards & Appeals, 5 NY3d 452, 465 (2005). Further, a favorable outcome for the Plaintiff would necessarily bar other parties from asserting these claims against the Defendants, and a favorable outcome for the Defendant would bar the Estate of Oscar Stettiner, and possibly other parties in interest to Stettiner et Cie, from litigating these claims in New York. Finally, a judgment may be rendered in favor of the owners of the painting absent the joinder of the estates of Alphonse and Adele Stettiner. Thus, pursuant to CPLR 1001(b), the action may proceed absent the joinder of the estates of both Alphonse and Adele Stettiner.
G. CPLR 3211(a)(3) — Lack of Capacity[FN11]

In addition to their absence as necessary parties, the Defendants also allege the Plaintiff lacks the standing or capacity to assert these claims absent all six Stettiner heirs. Lack of capacity, however, addresses the parties' ability to bring its claim into court and is without a concrete definition. See Community Board 7 of Borough of Manhattan v. Schaffer, 84 NY2d 148, 155 (1994). Courts have held that the "legal capacity to sue, or lack thereof, often depends purely on the litigant's status, such as that of an infant, an adjudicated incompetent, a trustee, certain governmental entities or, as in this case, a business corporation." Security Pacific National Bank v. Evans, 31 AD3d 278, 279 (1st Dep't 2006). As it pertains to capacity, the cause of action is one being asserted by the Estate of Oscar Stettiner. Given that the New York Surrogate's court has determined that the ancillary probate is proper, Plaintiff Gowen, by virtue of his capacity as the limited ancillary administrator of the estate, has the capacity to bring the claims on behalf of Oscar Stettiner's estate. See Estate of Stettiner, 148 AD3d 184, 191-192 (1st Dep't 2017) (noting that an estate's assets can include a cause of action which arises in New York).
The Defendants' argument, however, also resounds as an argument pertaining to lack of standing rather than a lack of capacity. Standing to bring a claim requires the presence of injury in fact which affords the Plaintiff an actual legal estate in the matter being adjudicated. Security Pacific National Bank, 31 AD3d at 279. Had the Painting been owned by Stettiner et Cie, rather than by Oscar Stettiner individually, then the estates of the three shareholders in the company, namely Alphonse Stettiner, Oscar Stettiner, and Adele Stettiner, would each have standing to assert a claim by virtue of their shareholder interest in the company. The Estate of Oscar Stettiner, however, claims the Painting was owned by Oscar individually.
The question of standing is therefore determined by which parties were harmed by the conduct. Id. Whether by virtue of an interest in Stettiner et Cie or simply as an individual, Oscar Stettiner was an injured party when the Painting was confiscated by the Nazis. The Estate of Oscar Stettiner has standing to bring the claims.[FN12]
 See id at 279; see also Leon v. Martinez, 84 NY2d 83, 87-88 (1994) (noting the Complaint is given the benefit of every possible favorable inference and that any documentary evidence presented must conclusively refute the Plaintiff's claims).
H. CPLR 3211(a)(7) — Failure to State a Cause of Action[FN13]

The Court reiterates its' discussion in Section A, which pertains to the applicable legal standards, that "on a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction. We accept the facts as alleged in the Complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." Leon v. Martinez, 84 NY2d 83, 87-88 (1994).
i. Plaintiff's Claim for Declaratory Judgment (Count 1)
The point and purpose of a declaratory judgment is to declare the respective legal rights of the parties based on a given set of facts, not to declare findings of fact. Thome v. Alexander & Louisa Calder Foundation, 70 AD3d 88, 100 (1st Dep't, 2009). In the instant action, the Plaintiff seeks to have a declaration permitting George Gowen, as limited ancillary administrator, to possess the Painting so as to return it to its rightful owners. While a declaratory judgment is unnecessary where the party has an adequate, alternative remedy in another form of action, here a declaratory judgment granting the ancillary administrator the right to obtain possession of the Painting is an acknowledgment of Plaintiff Gowen's standing to accept a judgment on behalf of the Estate of Oscar Stettiner; it is therefore not improper. See e.g. Cuomo v. Long Island Lighting Co., 71 NY2d 349, 354 (1988) (noting the courts may not issue judicial decisions that "can have no immediate effect and may never resolve anything).
ii. Plaintiff's Claims for Conversion and Replevin (Counts 2 and 3)
The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner. See Republic of Haiti v. Duvalier, 211 AD2d 379, 384 (1st Dep't 1995). Similarly, a claim for replevin involves an entitlement to property and demand for the return of the property has been made and refused by the possessor of the chattel. See Peters, 34 AD3d 29, 34 (1st Dep't 2006); see also Solomon R. Guggenheim Found. v. Lubell, 153 AD2d 143, 146 (1st Dep't 1990), aff'd, 77 NY2d 311 (1991) (determining that the cause of action for replevin against a thief accrues at the theft, but as against a good faith buyer accrues when the demand is made upon the buyer). Defendant argues that the Plaintiff cannot state claims for Conversion (Count 2) and Replevin (Count 3) against Defendants Davide Nahmad, Helly Nahmad, and Helly Nahmad Gallery, Inc. given that Defendant IAC holds title to the Painting. See Sinnot v. Feiock, 165 NY 444 (1901) (noting claims for replevin are permitted against the possessor). In the instant action, however, the Plaintiff has pleaded a theory of alter ego liability leaving the ultimate question of liability for conversion and replevin as being best left to discovery. Given that the court grants the Plaintiff the benefit [*11]of every favorable inference, the Court does not dismiss the claims at this time. See Leon, 84 NY2d at 87-88 (1994).
I. CPLR 3211(a)(5) — Statute of Limitations[FN14]

Defendants argue that this court should apply either the French or Swiss statute of limitations in determining this action. Defendants first part of this argument relies upon the premise that the French statute of limitations, and indeed French law, should be applied in this action because the Painting was initially bought and sold in France.[FN15]
 See Simenot Aff. Defendants then argue, alternatively, that the Swiss statute of limitations, and Swiss law generally, should be applied in this action because the Painting is presently located in a vault in Switzerland.
New York's General Rule, under CPLR 202, states a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued. Plaintiff argues that the cause of action accrued here in New York when Maestracci discovered that the Painting had been marketed here by Sotheby's in 2008, attempted to learn who the owner was, and then, in 2011, made a demand, in New York, upon who he believed the owner of the painting to be. See Amen. Comp. ¶¶72-73; see also Solomon R. Guggenheim Foundation v. Lubell, 77 NY2d 311 (1991). Maestracci then attempted to initiate an action in Federal Court which was subsequently dismissed for lack of diversity. See Amen. Comp. ¶75. During the limited discovery period in federal court, it was uncovered that title to the Painting was owned by Defendant IAC. See e.g. Maestracci v. Helly Nahmad Gallery, Inc., 155 AD3d 401, 404 (1st Dep't 2017) (determining that the first time the Plaintiff could have determined IAC held the title to the Painting was on December 22, 2011). Thus, contrary to the Defendants' argument that the cause of action accrued either in France or England, there is a strong argument that the cause of action accrued here, in New York, and New York law should apply.
Notwithstanding this discussion, the Court notes that at the end of 2016 the United States Congress passed the Holocaust Expropriated Art Recovery Act of 2016 (HEAR Act). The HEAR Act states:
Notwithstanding any other provision of Federal or State law or any defense at law relating to the passage of time, and except as otherwise provided in this section, a civil claim or cause of action against a defendant to recover any artwork or other property that was lost during the covered period because of Nazi persecution may be commenced not later than 6 years after the actual discovery by the claimant or the agent of the claimant of—(1) the identity and location of the artwork or other [*12]property; and (2) a possessory interest of the claimant in the artwork or other property. See HOLOCAUST EXPROPRIATED ART RECOVERY ACT OF 2016, Pub. L 114-308, December 16, 2016, 130 Stat 1524; see also Cassirer v. Thyssen-Bonemisza Collection Found., 862 F.3d 951 (9th Cir., 2017).
By the express language of the HEAR Act, state statutes of limitations pertaining to causes of action involving artwork lost due to Nazi persecution are preempted. Thus the applicable statute of limitations is six years from the date of actual discovery.
Defendants rely on the recent Ninth Circuit decision in Cassirer v. Thyssen-Bonemisza Collection Foundation to argue that under a conflicts of law analysis, the Court should apply the statute of limitations for either France or Switzerland. Cassirer v. Thyssen-Bonemisza Collection Found., 862 F.3d 951 (9th Cir., 2017). The Court in Cassirer, however, expressly applied the statute of limitations as outlined in the HEAR Act. See id at 960.
In the instant matter, the Appellate Division, First Department, has already decided to apply the HEAR Act's 6-year statute of limitations given that the HEAR Act preempts New York State Law. See Maestracci v. Helly Nahmad Gallery, Inc., 155 AD3d 401, 404 (1st Dep't 2017). In 2011 Maestracci discovered who owned the Painting, started the 2011 federal action, then commenced this action in 2014 after withdrawing the federal action. Under the HEAR Act, this court finds the action is timely.
The Court soundly rejects the Defendants' argument that it should ignore the ruling of the appellate division and engage in a conflicts of law analysis to determine whether French or Swiss laws should apply. See Maestracci v. Helly Nahmad Gallery, Inc., 155 AD3d 401, 404 (1st Dep't 2017) (stating "We reject defendants' argument that HEAR can be displaced by a choice-of-law analysis.").
J. Foreign Affairs Implications — Act of State, International Comity, Conflict of Laws, and Judicial Notice of the Laws of a Foreign Sovereign Pursuant to CPLR 4511[FN16]

While this Court applies the 6-year statute of limitations regarding the HEAR Act, the Court finds that conducting analyses of parties' arguments as to the Act of State Doctrine, International Comity, and Conflicts of Law is of great benefit to the litigation. This is especially true given both Plaintiff's and Defendants' liberal use of CPLR 4511 to notice this court of applicable French and Swiss substantive law. Through CPLR 4511's requirement that the court shall take judicial notice of the laws of a foreign jurisdiction, the Defendants' argue that either French or Swiss substantive law should govern this litigation. See CPLR 4511(b). CPLR 4511(c) however, states every matter in the section may be determined by a judge or a referee. See CPLR 4511(c). A discussion of the parties' arguments shall provide clarity as to what effect or deference this court will grant to the French and Swiss laws during the remainder of this litigation.
i. Act of State Doctrine
The Act of State Doctrine is a longstanding policy of the United States Courts to exercise restraint and refrain from adjudicating the legitimacy of acts which were taken by another government. See e.g. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964). An exception to this policy of restraint occurs, however, when the United States' Secretary of State has issued a letter stating that the Courts need not exercise restraint in adjudicating a particular type of dispute. See id at 419 (discussing what has become known as the Bernstein exception); see also Bernstein v. N. V. Nederlandsche-Amerikaansche, Stoomvaart-Maatschappij, 210 F.2d 375, 375 (2d Cir. 1954) (discussing how the U.S. Secretary of State weighed in on the foreign affairs implications of a case involving the turnover of valuables looted by the Nazis). In Bernstein, the United States Secretary of State issued Press Release No. 296 on April 27, 1949, entitled: "Jurisdiction of United States Courts Re Suits for Identifiable Property Involved in Nazi Forced Transfers." See Bernstein, 210 F.2d at 376 (2d Cir. 1954). This statement read "The policy of the Executive, with respect to claims asserted in the United States for the restitution of identifiable property (or compensation in lieu thereof) lost through force, coercion, or duress as a result of Nazi persecution in Germany, is to relieve American courts from any restraint upon the exercise of their jurisdiction to pass upon the validity of the acts of Nazi officials." Id.
Thereafter, courts have held the Act of State Doctrine "should not be invoked if the policies underlying the doctrine do not justify its application." See Bigio v. Coca-Cola Co., 239 F.3d 440, 452 (2d Cir. 2000) citing W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., International, 493 U.S. 400, 404 (1990) (stating that the act of state doctrine should be applied where "adjudication would embarrass or hinder the executive in the realm of foreign relations"); see also Menzel v. List, 49 Misc 2d 300, 315 (Sup. Ct. NY Cty. 1966) (Klein, J.), modified, 28 AD2d 516 (1st Dep't, 1967), rev'd, 24 NY2d 91 (1969) (determining the Act of State Doctrine does not apply to cases involving Nazi looted art and deciding in the Plaintiff's favor; the Defendant appealed a ruling which pertained to a third-party complaint filed against the initial sellor of the painting for breach of warranty of title; the appellate division modified the damages awarded to the Third-Party Plaintiff based on that appeal, however, the New York Court of Appeals reversed that modification).
Here, both the United States and the State of New York have historical and public policy driven interests in adjudicating claims involving artwork looted during the Nazi regime such that it weighs against using the Act of State doctrine to defer to either Swiss or French law. This historical interest includes:
1) "In the immediate aftermath of World War II, the United States and its allies took on the task of locating and returning the many great works of art systematically looted by the Nazis." Estate of Stettiner, 148 AD3d 184, 186 (1st Dep't, 2017), leave to appeal denied sub nom. Matter of Estate of Stettiner, 30 [*13]NY3d 907 (2017).
2) The April 27, 1949 Press Release which was meant to "relieve American courts from any restraint upon the exercise of their jurisdiction to pass upon the validity of the acts of Nazi officials." Bernstein, 210 F.2d at 376 (2d Cir. 1954).
3) A determination by New York Courts that the Act of State Doctrine has no application concerning art looted by the Nazis. See e.g. Menzel v. List, 49 Misc 2d 300, 315 (Sup. Ct. NY Cty. 1966) (Klein, J.), modified, 28 AD2d 516 (1st Dep't, 1967), rev'd, 24 NY2d 91 (1969) (addressing a taking of artwork by the Nazi regime in Belgium, where the recognized government was the government of Belgium in exile, and acknowledging the United States as a treaty party to the Hague Conventions of which Article 46 states private property cannot be confiscated and Article 47 states "pillage is formally forbidden").
4) In 1998 the United States Congress' passed the Holocaust Victims Redress Act stating "it is the sense of Congress that, consistent with the 1907 Hague Convention, all governments should undertake good faith efforts to facilitate the return of private and public property, such as works of art, to the rightful owners in cases where assets were confiscated from the claimant during the period of Nazi rule and there is reasonable proof that the claimant is the rightful owner." HOLOCAUST VICTIMS REDRESS ACT, Pub. L 105—158, February 13, 1998, 112 Stat 15.
5) The United States Congress creation of the HEAR Act of 2016 which extends statutes of limitations governing Nazi looted art expressly states "The unique and horrific circumstances of World War II and the Holocaust make statutes of limitations especially burdensome to the victims and their heirs. Those seeking recovery of Nazi-confiscated art must painstakingly piece together their cases from a fragmentary historical record ravaged by persecution, war, and genocide. This costly process often cannot be done within the time constraints imposed by existing law." HOLOCAUST EXPROPRIATED ART RECOVERY ACT OF 2016, Pub. L 114-308, December 16, 2016, 130 Stat 1524
6) New York and Federal case law which supports litigating actions involving Nazi looted art. See e.g. Reif v. Nagy, 149 AD3d 532 (1st Dep't 2017) (modifying an order to dismiss the complaint so as to dismiss a claim, involving Nazi looted art, under New York's General Business law. The remaining claims were permitted to proceed); Kainer v. Christie's Inc., 141 AD3d 442 (1st Dep't 2016), leave to appeal denied sub nom. Beck v. Christie's Inc., 29 NY3d 907 (2017) (dismissing a claim involving Nazi looted art under New York's statute of limitations); Bakalar v. Vavra, 500 F. App'x 6, 7 (2d Cir. 2012) (applying NY law and determining that the Plaintiffs' were estopped from asserting a claim under the doctrine of laches, and declining to examine the district Court's prior holding that the artwork at issue was not looted by the Nazis); Bakalar v. Vavra, 619 F.3d 136, 140 (2d Cir. 2010) (applying New York Law after making a determination that New York rather than [*14]Swiss law should apply to a claim involving Nazi looted art); Wertheimer v. Cirker's Hayes Storage Warehouse, Inc., 300 AD2d 117, 118 (1st Dep't 2002) (applying New York law to dismiss a claim involving Nazi art under laches where the party could not show diligent inquiry); Menzel v. List, 49 Misc 2d 300, 315 (Sup. Ct. NY Cty. 1966) (Klein, J.), modified, 28 AD2d 516 (1st Dep't, 1967), rev'd, 24 NY2d 91 (1969) (applying both New York and U.S. law to resolve a claim involving Nazi looted art in favor of the Plaintiff and permitting the Defendant to seek indemnification from the Sellor of the painting).
As a result of this longstanding policy of adjudicating claims involving possessions pillaged by the Nazi regime this Court determines that this Court need not exercise judicial restraint during the pendency of this action.
ii. Comity and Conflict of Laws
The Defendants also argue this court should apply either French or Swiss substantive law out of a sense of international comity. This court answers that question in the negative. The principal of international comity is based upon one of international cooperation. See Hilton v. Guyot, 159 U.S. 113, 163-164 (1895) (stating "Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.").
Where a cause of action arises in one country, and a potential judgment is obtained against property located in another country, comity ensures that the laws of the nation in which the cause of action arose will be honored. See e.g. CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V., 100 NY2d 215, 221 (2003) (affirming the docketing of a money judgment in New York from a foreign jurisdiction); Abu Dhabi Commercial Bank PJSC v. Saad Trading, Contracting & Financial Services Co., 117 AD3d 609, 610 (1st Dep't 2014) (permitting a bank located in Abu Dhabi to domesticate, in New York, a judgment originally obtained in England); AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A., 2018 WL 755355, at *3 (1st Dep't February 8, 2018) (distinguishing between Judgments which must be accorded full faith and credit with judgments that are domesticated through the principal of comity); CPLR Article 53 (permitting the domestication of foreign judgments); CPLR §5307 (stating that nothing bars recognition of foreign judgments not contemplated by this article). Comity does not serve as a bar in determining whether New York law applies in claims involving looted art; such claims are left to a conflict of laws analysis. See e.g. Bakalar v. Vavra, 619 F.3d 136, 143 (2d Cir. 2010) (applying New York Law in a case involving Nazi looted art which determined a conflict of law between United States and Swiss laws) citing Istim, Inc. v. Chem. Bank, 78 NY2d 342, 345 (1991) (applying an interest analysis).
To determine which law governs, courts sitting in New York have conducted an interest analysis requiring the application of the laws of the jurisdiction with the greatest interest in the litigation. See e.g. Bakalar, 619 F.3d at 144. To conduct a conflicts of law analysis, based on the interests of the conflicting jurisdictions, the facts or contacts which obtain significance in defining the State's interest are those which relate to the particular law in conflict. See id.
Given New York's reputation as being a world-renowned center for art and culture, New York has a vested interest in protecting its stream of commerce from those who would seek to profit from plunder and pillage. See e.g. Solomon R. Guggenheim Found. v. Lubell, 77 NY2d 311, 320 (1991) (stating "New York enjoys a worldwide reputation as a preeminent cultural center. To place the burden of locating stolen artwork on the true owner and to foreclose the rights of that owner to recover its property if the burden is not met would, we believe, encourage illicit trafficking in stolen art."); see also Menzel v. List, 49 Misc 2d 300, 312 (Sup. Ct. NY Cty. 1966) (Klein, J.) (noting that the United States is a signatory to the Hague Conventions and has incorporated articles which bar pillage and protect the property rights of citizens into its domestic law). 
In contrast, the Defendants note that the Plaintiff may be unable to recover the allegedly stolen property in Switzerland. See generally Gautier Aff.; see also Bakalar v. Vavra, 619 F.3d at 143 (applying New York Law rather than Swiss Law after using an interest analysis given that New York had a greater interest in ensuring it did not dilute its markets with stolen works of art). After a review of the Swiss law, this Court holds that it need not consider those laws during the pendency of this action as New York has a stronger interest in protecting its valuable art market from plundered goods. See Bakalar v. Vavra, 619 F.3d at 143; see also Solomon R. Guggenheim Found. v. Lubell, 77 NY2d 311, 319-320 (1991) (holding a thief cannot pass good title).
The Defendants also argue that the Plaintiff would be unable to recover under French Law where the Painting was sold to a bona fide purchaser after the tainted transaction. See Generally Simenot Aff. This is, again, at odds with New York law. New York law expressly voids a transaction to a thief and, if the thief sells the painting, requires the owners to make diligent inquiry and a demand upon a good faith purchaser. See Bakalar v. Vavra, 619 F.3d at 143 (applying New York Law rather than Swiss Law after using an interest analysis); see also Solomon R. Guggenheim Found. v. Lubell, 77 NY2d 311, 319-320 (1991) (holding a thief cannot pass good title). After a review of the French laws, this Court determines New York, again, has a greater interest in protecting its valuable market from plundered goods.
New York markets are not now, and shall not become, a safe harbor for the fruits of property pillaged during the course of the Nazi genocide. See e.g. Reif v. Nagy, 149 AD3d 532 (1st Dep't 2017); Kainer v. Christie's Inc., 141 AD3d 442 (1st Dep't 2016), leave to appeal denied sub nom. Beck v. Christie's Inc., 29 NY3d 907 (2017); Bakalar v. Vavra, 500 F. App'x 6, 7 (2d Cir. 2012); Bakalar v. Vavra, 619 F.3d 136 (2d Cir. 2010); Wertheimer v. Cirker's Hayes Storage Warehouse, Inc., 300 AD2d 117 (1st Dep't 2002); [*15]Menzel v. List, 49 Misc 2d 300 (Sup. Ct. NY Cty. 1966) (Klein, J.), modified, 28 AD2d 516 (1st Dep't, 1967), rev'd, 24 NY2d 91 (1969). While CPLR 4511(b) requires this court to take judicial notice of the laws of a foreign jurisdiction upon the request of the party, this court need not, and shall not, give further consideration or application to those laws. This Court holds it will apply the laws of the state of New York during the remainder of this litigation.
K. CPLR 327(a) — Forum Non Conveniens[FN17]

Defendants also argue that New York is an inconvenient forum such that a dismissal is warranted. Among the factors to consider when deciding a motion to dismiss on CPLR 327(a) grounds are:
[T]he burden on New York courts, potential hardship to the defendant, the unavailability of an alternate forum, the residence of the parties, and the location of the events giving rise to the transaction at issue in the litigation, with no one factor controlling. Other factors may include the location of potential witnesses and documents and the potential applicability of foreign law. See Elmaliach v. Bank of China Ltd., 110 AD3d 192, 208 (1st Dep't 2013); see also Islamic Republic of Iran v. Pahlavi, 62 NY2d 474, 481 (1984).
Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed, even where the plaintiff is not a resident of New York. See Elmaliach, 110 AD3d at 208.
i. Burden on the Court
Defendants argue that the burden placed upon the court in litigating this action includes the need to apply foreign law, obtain numerous documents pertaining to the application of foreign law, as well as translations of documents from other languages. This argument is unavailing as the First Department has expressly noted that the courts of this state are fully equipped to obtain translations and apply the laws of a foreign State. See American BankNote Corp. v. Daniele, 45 AD3d 338, 339 (1st Dep't 2007) (noting NY courts can apply Argentine law); see also Georgia-Pacific Corp. v. Multimark's International Ltd., 265 AD2d 109, 112 (1st Dep't, 2000) (noting the dispute was a "straightforward" commercial dispute of the type frequently handled by the Commercial Division). Further, after having conducted a conflict of laws analysis, this Court has determined that it need not apply foreign law at all. See supra Section J. The court is not unduly burdened by adjudicating the instant matter.
ii. Availability of an Alternative Forum
Defendants argue that a proper alternative forum to litigate this case would be either in Switzerland, where the painting is alleged to be kept, or in France, where Oscar [*16]Stettiner's heir resides, so as to prevent unnecessary costs to the parties when litigating in New York. This argument, however, is also unavailing given that litigation in either France or in Switzerland would also incur serious travel costs to the parties. Defendant Davide Nahmad is an Italian national residing in Monaco, he does not appear to have any other ties to either France or Switzerland. Defendant IAC is a Panamanian Corporation with no other ties to New York, France, or Switzerland except the conduct which granted personal jurisdiction over it. See Section II.B supra. Defendant Helly Nahmad Gallery is located in both London and New York. Defendant Helly Nahmad (individually) is alleged to be a New York resident. Litigation in either France or Switzerland would present similar issues to litigating the claims in New York. Further, as the Defendants have already argued, under both French and Swiss law the claims may be barred. See Section J supra; see also Simenot Aff.; Gautier Aff. Ex. 7. As a result, the Defendants cannot demonstrate there is an adequate alternative forum to hear this matter.
iii.Residence of the Parties
Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed, even where the plaintiff is not a resident of New York. See Elmaliach v. Bank of China Ltd., 110 AD3d 192, 208 (1st Dep't 2013). Plaintiff seeks to bring this action here in New York based upon the Painting's entrance into New York's stream of commerce and subsequent demand for return of the painting. See Solomon R. Guggenheim Foundation v. Lubell, 77 NY2d 311, 316-317 (1991). One of the Defendants is alleged to be a New York company, and another Defendant is alleged to reside here in New York.
The Defendants' argument that the lack of residency of the Plaintiff, as well as the fact that Defendants are from countries such as Panama, England, Italy, and Monaco in addition to New York merely parrots their prior argument. In addition, it should be noted that the Defendants' argument the Plaintiff is not a New York resident is actually a fallacy. The Plaintiff in this action is George Gowen, a New York resident, in his capacity as the limited ancillary administrator for the Estate of Oscar Stettiner. See e.g. Estate of Stettiner, 148 AD3d 184 (1st Dep't 2017) (noting that ancillary letters of administration were granted to George Gowen to manage Oscar Stettiner's Estate).
Insofar as the residence of the parties is concerned, the Court initially notes that two Defendants and the Plaintiff are New York residents, providing a strong argument in favor of continuing this case in New York. It is precisely because the remaining parties and witnesses have no single, common, country in which they all reside that these arguments are not of controlling importance.
iv. Location of Events and Potential Witnesses
The Painting was marketed here in New York by Sotheby's in 2008 and prior to that was allegedly shown on at least two occasions from 2005 — 2006 in New York. Aurnou 2018 Affirm. ¶¶11-14 (NYSCEF Doc. No. 1608); see also Amen. Comp. ¶¶64-67. [*17]Witnesses who can attest to the representations made about the painting when it was marketed, such as the Helly Nahmad Gallery and Sotheby's, are located here in New York.
The Defendants argue that the unavailability of certain witnesses would so prejudice the defendants so as to deny them their rights of due process under the 5th and 14th Amendments of the U.S. Constitution, as well as Artcle 1 ¶6 of the New York State Constitution. Defendants argue, specifically, that "Maestracci has cancer and is unable to travel to New York. In the past two weeks Defendants have been advised . . . that Maestracci has suffered a heart attack and cannot leave his home." See Glanc Affirm. ¶7. Defendants also argue that a potential witness, Eve Livengood, "by her own admission, is in bad health, over 70 years old, has cancer and is unable to travel" and that Livengood does not respond to "attempts to communicate with her." See Glanc Affirm. ¶10.
These arguments are unavailing given the fact that the CPLR has provisions which permit taking depositions, and even testifying, outside of New York State. See CPLR 3108; see also CPLR 3113. In fact, it appears to be all the more important to permit the Plaintiff to pursue this action in New York given that, by Defendant's own understanding, Philippe Maestracci, heir to the estate and a witness with the historical knowledge of the Stettiner family, has cancer and has recently suffered from a heart condition. See Glanc Affirm. ¶7. Discovery would allow Philippe Maestracci to be deposed such that, should Philippe Maestracci be unavailable at a future date, his testimony would be preserved for the record. The Court further notes that, in exceptional circumstances such as an illness preventing an elderly witness from traveling, it has the capacity to determine whether to permit video testimony at trial. See e.g. People v. Wrotten, 14 NY3d 33, 40 (2009) (holding live two-way video testimony could be used in a criminal trial in exceptional circumstances). Defendants have not, therefore, demonstrated sufficient grounds to warrant a dismissal of this matter on forum non conveniens grounds pursuant to CPLR 327(a).
L. Dismissal Based on the Doctrine of Champerty[FN18]

Defendants argue that the lawsuit is barred by the doctrine of champerty in that Plaintiff has financed the lawsuit through a third-party, Mondex. Mondex is alleged to have retained the attorney on behalf of Maestracci, conducted the research, and pursued the claims on his behalf. Glanc Affirm. ¶¶13-16.
Champerty is defined as "An agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds; specifically, an agreement to divide litigation proceeds between the owner of the litigated claim and a party unrelated to the lawsuit who supports or helps enforce the claim." See CHAMPERTY, Black's Law Dictionary (10th ed. 2014).
New York's Judiciary Law expressly bars champertous actions except where an assignment of claims is taken by "any moneyed corporation authorized to do business in the state of New York or its nominee pursuant to a subrogation agreement or a salvage operation, or by any corporation organized for religious, benevolent or charitable purposes." NY Judiciary Law § 489(1). Another exception to the bar against champertous actions occurs where the action involves "bonds, promissory notes, bills of exchange, book debts, or other things in action, or any claims or demands, if such assignment. . . [has] an aggregate purchase price of at least five hundred thousand dollars." NY Judiciary Law § 489(2) (emphasis added).
The doctrine of Champerty will bar claims which have been assigned for purposes of litigation. See Trust For the Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp., 13 NY3d 190, 200 (2009) (holding the Plaintiff could not recover as it was assigned a right for the purpose of litigation); see also Fairchild Hiller Corp. v. McDonnell Douglas Corp., 28 NY2d 325, 330 (1971). Courts have typically voided a champertous assignment; this effectively denies the Plaintiff standing to assert a claim warranting dismissal of the Plaintiff's claims. Id. Had Mondex been assigned the claim and commenced this lawsuit in its own name, as opposed to the Estate of Oscar Stettiner commencing this action in its own name, then dismissal on the grounds of champerty would have been appropriate. See e.g. Love Funding Corp., 13 NY3d at 200 (voiding the assignment of rights from a non-party to the Plaintiff which effectively denied Plaintiff standing).
Here, however, the Plaintiff is the Estate of Oscar Stettiner, not Mondex Corporation, and the Plaintiff has the right to assert these claims on its own behalf. See id. (voiding the assignment of rights from a non-party to the Plaintiff). The alleged champertous action does not involve an assignment of claims by the Plaintiff to non-party Mondex, but rather a financing arrangement between the Plaintiff and non-party Mondex which allows the Plaintiff to adequately assert its own claims. See Glanc Affirm. ¶14. Thus, even were the court to find this action champertous, voiding the financing Agreement between Maestracci and Mondex would not be grounds for dismissal of the Plaintiff's claims.
In addition to this technicality, there is also an exception to the champerty statute where, "things in action, or any claims or demands" have a purchase price in excess of $500,000. See NY Judiciary Law 489(2). Here, the value of the Painting is alleged to exceed $25 million, falling squarely within this exception. See Amen. Comp. ¶83. 
Finally, the Court notes that the Champerty statute is to be applied narrowly, and "does not apply when the purpose of an assignment is the collection of a legitimate claim." Love Funding Corp., 13 NY3d at 201; see also Justinian Capital SPC v. WestLB AG, NY Branch, 37 Misc 3d 518, 525 (Sup. Ct. NY Cty., August 15, 2012) (Kornreich J.). Given that the Plaintiff is asserting claims on its own behalf, and not as an assignment, that there is an exception to the champerty statute where the Painting is believed to exceed $25 million, and given that the champerty statute is to be construed narrowly, the [*18]Court concludes that it will not dismiss the Plaintiff's claims under the doctrine of champerty.
III. Conclusion[FN19]

As a result of the foregoing it is:
ORDERED that the Defendants' motion to dismiss is DENIED; and it is further
ORDERED that while the Court takes judicial notice as to the laws of Switzerland and France, the laws to be applied during the pendency of this action are New York's laws and not the laws of France or Switzerland.
The Defendants are directed to file an Answer within 10 days of service of the entry of this order pursuant to CPLR 3211(f).
DATED: May 8, 2018
_____________________________



Footnotes

Footnote 1: The Background section as presented in this decision is more expansive than the abridged background presented on the transcript at Tr. 3:2 -4:24 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 2: Oscar Stettiner had two children, a son and a daughter. His son, Jacques Henri Stettiner died without issue. His daughter had daughter had a child by the name of Philippe Jacques Maestracci, who is alleged to be the sole heir. See Comp. ¶45-46; see also Comp. Ex. 17. 

Footnote 3: According to the Complaint, the Venice Bienale is a world-famous art exhibition which occurs every two years. 

Footnote 4:
 Defendants are taken to mean all the Defendants collectively as they are pleaded to be alter egos of each other. See Infra Part II.B. As an additional note, the Amended Complaint and case caption spell the name of one of the Defendants as "David Nahmad," Defendants' briefing and attached evidence spells his first name "Davide." David and Davide refer to the same person and are used interchangeably. 

Footnote 5: See Tr. 7:5 — 7:25 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 6: See Tr. 7:26 — 21:4 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 7: See Tr. 21:5 — 24:3 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 8: See Tr. 24:4 — 26:6 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 9: See Tr. 26:9 — 27:9 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 10: See Tr. 28:2 — 30:3 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 11: See Tr. 30:4 — 31:22 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 12: While the Court gives greater deference to the Complaint which states that Oscar Stettiner owned the Painting individually, the Court merely notes the Defendants lack of capacity or lack of standing argument is a nonstarter as the Estate of Oscar Stettiner was injured either in its shareholder capacity or as an individual. See Leon v. Martinez, 84 NY2d 83, 87-88 (1994)

Footnote 13: See Tr. 31:23 — 34:14 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 14: See Tr. 34:15 — 39:5 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 15: In fact, International Art Center bought the Painting at a 1996 auction at Christies. Amen. Comp. ¶¶59, 61, 68, 76.

Footnote 16: See Tr. 39:6 — 51:5 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 17: See Tr. 51:6 — 58:5 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 18: See Tr. 58:6 — 61:24 (Charisse Kitt, SCR) (April 18, 2018).

Footnote 19: See Tr. 61:25 — 62:11 (Charisse Kitt, SCR) (April 18, 2018).