[46 NYS3d 608]

In the Matter of the Estate of Oscar Stettiner, Deceased. International Art Center, Appellant; Estate of Oscar Stettiner et al., Respondents.

First Department, February 14, 2017

**APPEARANCES OF COUNSEL**

*Aaron Richard Golub, Esquire, P.C.*, New York City (*Nehemiah S. Glanc* of counsel), for appellant.

*McCarthy Fingar LLP*, White Plains (*Phillip C. Landrigan* of counsel), for respondents.

**OPINION OF THE COURT**

Tom, J.P.

The genesis of this litigation was in 1939, when, with the Nazi invasion imminent, decedent Oscar Stettiner, a Jewish art collector, abruptly fled Paris, leaving his art collection behind. His art collection was later sold by the Nazis, including an early twentieth century painting by the Italian artist Amedeo Modigliani, which Stettiner's heir seeks to recover. The issue before this Court is whether petitioner International Art Center, S.A. (IAC), which purchased the painting in 1996 for $3.2 million, has standing to challenge the ancillary letters of administration issued to the heir's representative for purposes of commencing litigation to recover the painting. We hold that petitioner lacks standing, and that, in any event, the limited ancillary letters were properly issued.

In the immediate aftermath of World War II, the United States and its allies took on the task of locating and returning the many great works of art systematically looted by the Nazis. While millions of works were recovered and returned to the rightful owners, individual Holocaust victims and their heirs have struggled for decades to obtain restitution.

The efforts to recover these treasures have been recently popularized in movies including 2014's "Monuments Men," and 2015's "Woman in Gold," which chronicled Maria Altmann's pursuit of her family's paintings looted in Austria, including Gustav Klimt's "Portrait of Adele" (1907), of which Altmann won restitution following litigation that reached the United States Supreme Court (*see Republic of Austria v Altmann*, 541 US 677 [2004]).

While this great theft may have taken place more than 70 years ago, a resolution was not possible until a combination of scholarship and technology allowed for the creation of databases compiling lists of missing works, and until nations agreed to international guidelines on art restitution such as those laid out in the 1998 Washington Principles on Nazi-Confiscated Art. Even at the tail end of 2016, the United States Congress felt it necessary to pass additional legislation to aid victims of Holocaust-era persecution and their heirs to recover works of art confiscated or misappropriated by the Nazis, and to ensure that claims to artwork and other property stolen or misap-

propriated by the Nazis are not unfairly barred by statutes of limitations but are resolved in a just and fair manner. This legislation became law on December 16, 2016 (*see* Holocaust Expropriated Art Recovery Act of 2016, Pub L 114-308, 130 US Stat 1524, amending 22 USC § 1621 *et seq.*).

The painting at issue is known as "Seated Man With a Cane" (1918) and is currently owned by petitioner. It is alleged to have been confiscated by the Nazis from decedent, who resided in Paris in the 1930s.

Respondents, the Estate of Oscar Stettiner, Philippe Maestracci, and George W. Gowen, as Limited Ancilliary Administrator of the Estate of Oscar Stettiner, contend that in 1930 decedent Oscar Stettiner purchased a painting, which he subsequently loaned to the 1930 Venice Biennale, a world-famous art exhibition. The painting was listed as number 35 in the exhibition, and, according to respondents, a label on the back of the painting by the Venice Biennale establishes it is the same painting as the one at issue in this case.

In 1939, before the Nazi invasion, decedent fled Paris to his home in what became the unoccupied zone of France. In 1941, the Nazis appointed a temporary administrator to sell Jewish property and turn the proceeds over to the Third Reich. On July 3, 1944, the subject painting was sold by the temporary administrator to J. Van der Klip.

In 1946, decedent sought the return of his painting in a French court and received an emergency summons voiding the forced sale and directing Van der Klip to return the painting to him. Van der Klip claimed that he did not know the whereabouts of the painting, having sold it to an unknown American officer in a café. Respondents contend that the painting was secreted by the Van der Klip family for 52 years.

Decedent died intestate in France on February 25, 1948. Respondent Philippe Maestracci, a French domiciliary, is decedent's only surviving grandson and sole heir.

In 1996, Van der Klip's only surviving daughter and her nephew consigned a painting bearing the same title and artist in issue to Christie's in London, for auction on June 25, 1996. The catalogue for the auction stated that the painting was listed as number 16 at the 1930 Venice Biennale. Respondents contend that the artwork designated number 16 was not listed as belonging to decedent.

On June 25, 1996, petitioner IAC, a Panamanian entity, allegedly formed and controlled by the family of Hillel (Helly)

Nahmad, owner of Helly Nahmad Gallery, Inc., purchased a painting for $3.2 million. Nahmad was a New York resident, and the Gallery, a New York corporation, was located in Manhattan and abroad. Respondents allege that the painting was the same painting that was stolen from decedent. In 2008, it was valued by Sotheby's at between $18 and $25 million.

The painting was exhibited at the Gallery's London location in 1998; at an art museum in Switzerland in 1999; at the Gallery in New York in 2005; and at the Royal Academy of Arts in London in 2006, "courtesy of Helly Nahmad."

In 2008, IAC consigned the painting to Sotheby's for sale in New York. The catalogue for the sale noted under "provenance" decedent's "possible" prior ownership and stated that the painting was exhibited as number 35 at the 1930 Venice Biennale.

There were no bids for the painting, and it was returned to IAC's storage facility in Switzerland in December 2008, where it remained until April 2016. Respondents contend that the painting was transported to Switzerland after Nahmad learned from Sotheby's that it had been stolen from decedent and potential bidders were concerned about title. It has been reported that in April 2016 Swiss authorities confiscated the painting as part of a criminal investigation into the ownership of the painting.

Although Maestracci demanded return of the painting from the Gallery in 2011, he received no response. Accordingly, that same year he commenced an action against the Gallery in the United States District Court for the Southern District of New York, seeking a declaratory judgment and asserting claims for conversion and replevin of the painting. The federal action was withdrawn without prejudice on March 27, 2012, possibly due to Maestracci's inability at that time to represent the Estate.

On March 7, 2013, respondent George W. Gowen, an attorney for Maestracci, and a New York resident, petitioned Surrogate's Court, New York County, for ancillary letters of administration to commence litigation in Supreme Court, New York County, for return of the painting, which was allegedly under the control of the Gallery, Nahmad, and David Nahmad (agent for the Gallery), New York residents (collectively, Nahmads), and IAC, a foreign entity transacting business in New York. The petition stated that there was no personal property of decedent in New York, and stated that the sole purpose of seeking appointment or an administrator was to commence a legal action by a New York resident against foreign parties.

To establish jurisdiction pursuant to SCPA 206, Gowen provided an affidavit from Edward W. Greason, Esq., an associate at the firm representing Maestracci. Greason recounted the history of the painting and stated that in order to commence a proceeding to recover it, appointment of a fiduciary for the Estate was necessary to act as the proper party in interest. Because Maestracci was not an American citizen, he did not qualify, so with Maestracci's consent, Gowen was seeking to act as administrator of decedent's ancillary New York estate.

In a second affidavit, Greason stated that pursuant to SCPA 103 (44), a "chose in action" was defined as property, and the Estate had the right to commence an action in New York to recover the painting because the Nahmads were New York residents and the Gallery was a New York corporation. Greason also stated that the painting was believed to be in New York in the possession of the Nahmads.

On June 27, 2013, the Surrogate's Court, New York County, issued limited ancillary letters of administration to Gowen. Thereafter, in 2014, respondents commenced an action in Supreme Court, New York County, against IAC and the Nahmads. Jurisdiction over IAC was based on allegations that it did business at the same office in Manhattan as the Gallery, purposely transacts business in New York, and that it was an offshore entity used by the Nahmad family as an instrument to hold their personal family interests in art, most of which were located in Switzerland. The complaint requested a declaratory judgment that Maestracci was the owner of the painting, and asserted claims for conversion and replevin.

On March 2, 2015, IAC filed a petition before the Surrogate's Court seeking to revoke the limited ancillary letters of administration issued to Gowen. Initially, IAC alleged that it had standing to seek the relief because it was a person "interested" in the Estate as the owner of the painting and a defendant in the action. The petition also alleged that resolution of whether the Surrogate's Court had subject matter jurisdiction to issue the ancillary letters might moot the action, and claimed the issuance of the letters was based on material misstatements in that respondents falsely claimed that the Estate's sole asset, the painting, was located in New York, when it was returned to Switzerland in 2008.

In support of the petition, IAC submitted affidavits of Adelino Semedo, an officer of a storage facility in Switzerland, who detailed the location of the painting since it was received at the facility in Switzerland from Christie's London on March

21, 1997. In particular, he stated that the painting was shipped to Sotheby's New York on September 18, 2008, and returned to the facility on December 18, 2008, where it remained.

IAC also submitted affidavits of Harco Van Den Oever, and Julie Kim, international business director, and acting director, respectively, for the Impressionist and Modern Departments of Christie's affiliates globally, stating that IAC purchased the painting at an auction on June 25, 1996. Further, IAC provided an affidavit of Daisy Edelson, senior vice president and business director of Sotheby's Impressionist and Modern Art Departments in New York, stating that the painting was consigned for auction by IAC, not Gallery, and was returned to Switzerland on December 4, 2008.

IAC argued that the Surrogate's Court lacked subject matter jurisdiction for the issuance of the ancillary letters. IAC also maintained that factual misrepresentations were made to secure the letters in that the painting was not in New York, and was purchased by IAC, not the Nahmads.

Respondents responded that IAC's wrongful refusal to return the painting was a tortious act amenable to suit in New York under CPLR 302 and SCPA 210 (1) and (2) (a). They asserted that SCPA 103 (44) and 2103 (2) provided that a "chose in action" was an asset of an estate. Moreover, they claimed that IAC lacked standing as an interested person under SCPA 103 (39) because it was not a beneficiary of the Estate or a trustee in bankruptcy or receiver, and that IAC's interest was in the painting and the action, not in the Estate. In addition, they argued that there was no other forum with jurisdiction over all parties, and equity favored a prompt resolution of the Estate's claims. They noted that IAC had avoided discovery and that Maestracci was over 70 years of age and contended that IAC was seeking to prolong the proceedings. Finally, they claimed they did not make material misstatements to the court to obtain the letters.

Surrogate's Court dismissed IAC's petition, finding that IAC lacked standing to bring the application to revoke the limited ancillary letters issued to Gowen. In addition, the court concluded that the ancillary letters were not obtained by misrepresentations and that it had jurisdiction over estates of nondomiciliaries with a claim in New York under SCPA 2103 (2). We now affirm.

■ In order to seek revocation of ancillary letters of administration based on any of the grounds listed in SCPA 711, one must be "a co-fiduciary, creditor, person interested, any

person on behalf of an infant or any surety on a bond of a fiduciary." While IAC maintains it qualifies as a "[p]erson interested," that term is defined as "[a]ny person entitled or allegedly entitled to share as beneficiary in the estate or the trustee in bankruptcy or receiver of such person" (SCPA 103 [39]). However, IAC is neither a beneficiary nor a creditor of the Estate, and provides no other basis for a conclusion that it is a "[p]erson interested." Moreover, a defendant in an action brought by an estate is not an interested person (*see Matter of Chabrier*, 281 AD2d 346 [1st Dept 2001]). Accordingly, IAC does not have standing to seek revocation of the letters.

▪ Nevertheless, SCPA 719 permits the court to revoke letters when it becomes aware of facts supporting grounds for revocation. In this case, IAC alleges that Gowen obtained his letters by fraud. In particular, IAC claims that Gowen procured the letters by falsely claiming that the painting was located in New York when it was in fact located in Switzerland. This allegation stems from a statement in one affidavit that indicated a belief that the painting was in New York. However, the petition for the letters explicitly stated that the Estate had no property in New York, other than the right to commence an action. In other words, the petition did not assert that the painting was in New York, and there is no reason to believe that this assertion in one affidavit played a part in the court's determination to issue the ancillary letters.

IAC also challenges whether the Surrogate's Court had jurisdiction to entertain this matter. SCPA 206 (1) provides that the Surrogate's Court has jurisdiction over the estate of any nondomiciliary decedent who leaves property in the state. The Surrogate's Court should decline to exercise jurisdiction only when the controversy in no way affects the affairs of a decedent or the administration of the estate (*see Matter of Piccone*, 57 NY2d 278, 288 [1982]).

Significantly, although the authority of the Surrogate's Court over a nondomiciliary's estate in an ancillary proceeding is generally limited to estate assets within New York (*see Matter of Obregon*, 91 NY2d 591, 601 [1998]), property includes a "chose in action," e.g. a cause of action in New York (*see* SCPA 103 [44]).

▪ Accordingly, contrary to IAC's contention, SCPA 206 (1) does not require the physical presence of the subject property in New York at the time the proceeding for ancillary letters was commenced. It is sufficient that the Estate had a valid "chose in action" against two New York domiciliaries (the Nah-

mads), a New York corporation (the Gallery), and IAC, a foreign entity alleged to be owned and controlled by New York residents and doing business in New York.

IAC's reliance on cases where, unlike the "chose in action" here, the estate property was not located in New York is misplaced (*see e.g. Leve v Doyle*, 6 AD2d 1033 [1st Dept 1958]). IAC similarly misplaces reliance on *Obregon* which involved the estate pursuing claims against parties and trust assets in the Cayman Islands and not in New York.

██ Nor is there merit to IAC's personal jurisdiction claim. Initially, Surrogate's Court did not require personal jurisdiction over IAC in order to determine whether or not to revoke the grant of ancillary letters of administration since IAC was not a respondent in that proceeding. In any event, a court may exercise personal jurisdiction over any nondomiciliary who, in person or through an agent, transacts any business within the state or contracts anywhere to supply goods or services in the state or commits a tortious act within the state or regularly does or solicits business or engages in any other persistent course of conduct (CPLR 302 [a] [1], [2]). The commission of some single or occasional acts of an agent in a state may be enough to subject a corporation to specific jurisdiction in that state with respect to suits relating to that in-state activity (*see International Shoe Co. v Washington*, 326 US 310, 318 [1945]; *Daimler AG v Bauman*, 571 US —, —, 134 S Ct 746, 754 [2014]; *see also LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 214-216 [2000]).

In this case, personal jurisdiction was acquired based on IAC's admitted agreement with Sotheby's to act as its agent to sell the painting in New York in 2008. Further, personal jurisdiction over IAC may be based on respondents' allegations that IAC transacted business in New York through the Nahmads at the Gallery's office in Manhattan.

Respondents' motion to enlarge the record (M-5552) is denied.

Accordingly, the order of the Surrogate's Court, New York County (Nora S. Anderson, S.), entered August 10, 2015, which dismissed the petition to revoke limited ancillary letters of administration issued to respondent George W. Gowen, should be affirmed, without costs.

ACOSTA, ANDRIAS, MOSKOWITZ and KAHN, JJ., concur.

Order, Surrogate's Court, New York County, entered August 10, 2015, affirmed.