## Life Ins. Fund Elite, LLC v Hamburg Commercial Bank AG

2024 NY Slip Op 30014(U)

January 3, 2024

Supreme Court, New York County

Docket Number: Index No. 153100/2023

Judge: Melissa A. Crane

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. MELISSA A. CRANE                    PART                    60M

*Justice*

-------------------------------------------------------------------------------X

LIFE INSURANCE FUND ELITE, LLC.,

                           Plaintiff,

                    - v -

HAMBURG COMMERCIAL BANK AG, CERBERUS
EUROPEAN CAPITAL ADVISORS, LLP., PROMONTORIA
HOLDING 260 BV,

                       Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 153100/2023 |
| MOTION DATE | 09/12/2023 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 19, 20, 21, 22, 23, 34, 40, 41, 42, 43, 44, 46, 47

were read on this motion to/for                     DISMISS            .

      Defendants Hamburg Commercial Bank AG ("HCOB"), Cerberus European Capital Advisors, LLP ("Cerberus European"), and Promontoria Holding 260 BV ("Promontoria") have moved to dismiss Plaintiff Life Insurance Fund Elite, LLC's ("LIFE") complaint pursuant to CPLR 3211(a)(1), (5), (7), and (8). At oral argument on September 12, 2023, the court dismissed the third cause of action (breach of fiduciary duty against HCOB), sixth cause of action (civil conspiracy against Cerberus European), and seventh cause of action (demand for an accounting against HCOB). The court denied dismissal of the first cause of action (2013 breach of duty of commercial reasonableness against HCOB). The court otherwise reserved on the motion to dismiss. For the following reasons, the court denies the remainder of Defendants' motion to dismiss in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

      This case arises from Defendants' alleged failure to dispose of collateral in a reasonable manner that Defendants obtained from Plaintiff after Plaintiff defaulted on a loan. LIFE is a "private equity fund that invested in life insurance policies held by a non-discretionary trust"

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**
**Motion No.  002**

**Page 1 of 18**

1 of 18

(Complaint, NYSCEF Doc. No. 1, ¶ 2). As part of this business, HSH Nordbank ("HSH"), HCOB's predecessor, agreed to loan LIFE up to $150,000,000 in 2007 pursuant to a Loan Security Agreement between HSH, LIFE, and LIFE's subsidiary ISM Insurance Agency, LLC ("ISM Agency") (*id.*, ¶ 20; Loan Security Agreement ["LSA"], NYSCEF Doc. No. 2). A portfolio of life insurance policies secured the loan (Complaint, ¶¶ 21-25). Under the LSA, HSH could "at any time sell to one or more Qualified Purchasing Lenders[1] (an 'Assignee'), all or any part of its rights and obligations under [the] Agreement" (LSA, § 11.14[a]). Additionally, while HSH could "sell or offer to sell participating interests in the Note . . . without the consent of, or notice to, [LIFE] . . . [HSH] [would] retain the sole right and responsibility to exercise the rights of [HSH], and enforce the obligations of the Loan Parties" (*id.*, § 11.14[b]). In the event of a sale of participating interests in the Note, "[n]o Participant [would] have any rights . . . to receive payment of principal, interest or any other amount payable hereunder except through a Lender and as provided in this Section 11.14(b)" (*id.*).

In January 2013, after LIFE defaulted on the loan, it agreed, along with ISM Agency, to turn over to HSH the collateral that secured the loan pursuant to a Standstill Agreement (Complaint, ¶¶ 22-24; Standstill Agreement, NYSCEF Doc. No. 3). According to the Standstill Agreement, LIFE and ISM Agency owed HSH an aggregate principal amount "not less than $55,000,000" plus interest, costs, expenses, attorneys' fees, and other charges or contractual obligations (Standstill Agreement, Recitals, § C). Pursuant to the Standstill Agreement, LIFE agreed that "[s]ubject to the occurrence of a Trigger Event . . . [LIFE] hereby surrenders, delivers, grants and turns over to Collateral Agent [Wells Fargo Bank, N.A.], and Guarantors [ISM Agency]

---

[1] The LSA defines a "Qualified Purchasing Lender" as a "financial institution organized under the laws of a country which is a member of the Organization for Economic Co-operation and Development and that has a long-term unsecured senior debt rating of least A and A by S&P and Moody's, respectively (or the equivalent thereof)" (LSA, § 1.1).

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET**                    **Page 2 of 18**
**AL**
**Motion No.  002**

[* 2]                                              2 of 18

hereby acknowledge and consent to such surrender, delivery, grant and turnover by [LIFE] to Collateral Agent, peaceful possession of the Collateral" (*id.*, §§ 2.1-2.1[a]). Additionally, LIFE and ISM Agency "waive[d] all of their respective rights to notification" as to the "sale or other disposition by Collateral Agent of the Collateral" pursuant to the UCC (*id.*, § 2.1[b]).

The complaint alleges that, after HSH took control of the collateral insurance policies and paid $500,000 in reinstatement fees, the policies were worth $70 million (Complaint, ¶ 30). In addition to the value of the insurance policies, the trust also allegedly held a $62 million receivable from Avon Capital LLC ("Avon"), a former defaulting member of Plaintiff, bringing the total value of the LIFE assets HSH held to $132 million (*id.*, ¶¶ 32-36). LIFE alleges, that after taking control of the assets, HSH effected an unauthorized disposition of collateral by improperly claiming in disclosures to have merged with LIFE and treating income from the life insurance policies as "Other operating income" on its balance sheet (Complaint, ¶¶ 57, 67). The complaint alleges that HSH concealed this improper purported merger by keeping two separate sets of financial records, one that treated LIFE as a subsidiary of HSH and one that treated the relationship as a loan, "in connection with which the bank sent LIFE phony quarterly cash and collateral reports" (*id.*, ¶¶ 58-61). Subsequently, HSH allegedly pursued the trust's breach of contract claim against Avon, obtained a judgment for the trust of over $86 million in a 2016 arbitration, but then took no steps to collect the award (*id.*, ¶ 71). LIFE alleges, that through booking the trust's judgment as its own asset and using that asset as leverage to settle a different lawsuit against Avon, HSH engaged in another improper disposition of assets (*id.*).

In 2018, Promontoria, a company consisting of a "consortium of private equity investors" led by Cerberus Capital Management LP ("Cerberus"),[2] purportedly purchased a portfolio of loans

---

[2] The complaint alleges that Defendant Cerberus European is a subsidiary of Cerberus, which is not a party to this litigation (Complaint, ¶ 10).

**153100/2023 LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**
**Motion No. 002**

Page 3 of 18

from HSH, including the LIFE loan (*id.*, ¶¶ 76, 78; Loan Sale and Purchase Agreement ["LSPA"], NYSCEF Doc. No. 23).[3] According to the Promontoria February 22, 2018 management board resolution approving the transaction, the board "intended that the Company enters [sic] into a loan sale and purchase agreement (the LSPA) with respect to the sale and purchase of certain loan portfolio items by the Company from HSH Nordbank AG (the Seller)" (*id.*, Written Resolution of the Management Board of Promontoria Holding 260 B.V. ["Promontoria Resolution"], § 1.1.1). Under the LSPA, Promontoria would first pay the purchase price to HSH, and then Promontoria or an assignee and HSH would enter into a sub-participation agreement" (*id.*, § 4.7[a][i]-[ii]). Pursuant to the sub-participation agreement, HSH would provide "commercial title" to the portfolio items to Promontoria or the assignee, but HSH would "retain legal title" (*id.*). As the LSPA contemplated, Promontoria allegedly "sub-participated the Loan into a Master Fund Sub-participation and Trust Agreement ('MFSPA'), in which HCOB and another Cerberus-controlled entity, Promontoria North Designated Activity Company ('Promontoria North'), were participants" (Complaint, ¶ 80).

In 2019, Cerberus European allegedly initiated a process to sell the LIFE portfolio of insurance policies on Promontoria's behalf, retaining the investment bank Houlihan Lokey, Inc. ("Houlihan Lokey") (*id.*, ¶¶ 90-91). After discovering the impending sale, LIFE allegedly indicated to counsel for HCOB and Cerberus that it was prepared to make a bid itself for the collateral (*id.*, ¶ 114). Two days after this inquiry, counsel for HCOB and Cerberus informed LIFE that a different bidder purchased the collateral (*id.*). LIFE later learned that the purchaser bought the collateral at what LIFE contends was an "unreasonably low sales price" of $31.5 million (*id.*,

---

[3] The complaint alleges that this transaction was part of HSH's compliance with a European Commission mandate to undergo privatization by 2018, that ultimately resulted in HSH being sold to a consortium of private equity investors led by Cerberus and being "rebranded" as defendant HCOB (*see* Complaint, ¶ 75).

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**         **Page 4 of 18**
**Motion No.  002**

¶ 116). LIFE asserts that the policies "would have sold for more if LIFE had been given an opportunity to bid" (*id.*).

LIFE initially filed an action in federal court against HCOB, including for breach of the duty of commercial reasonableness related to the 2019 auction. Upon a motion to dismiss for failure to state a cause of action, the court dismissed the negligence and implied covenant of good faith and fair dealing claims, but denied dismissal of the breach of the duty of commercial reasonableness claim (*see Life Ins. Fund Elite LLC v Hamburg Commercial Bank AG*, 545 F Supp 3d 86, 91-93 [SDNY 2021]). However, the parties ultimately stipulated to voluntarily dismiss that federal action without prejudice (PACER, *Life Ins. Fund Elite LLC v Hamburg Commercial Bank AG*, 20-cv-8553, Doc. No. 62), and the court later dismissed a separate federal action for lack of subject matter jurisdiction (*see Life Ins. Fund Elite LLC v Hamburg Commercial Bank AG*, 2023 WL 1797169, *3 [SDNY Feb 7, 2023]).

LIFE then filed the complaint in this action on April 4, 2023, alleging causes of action for breach of the duty of commercial reasonableness based on the alleged 2013 disposition of collateral (count I), breach of the duty of commercial reasonableness based on the alleged disposition of the Avon arbitration award (count II), breach of fiduciary duty (count III), breach of contract (count IV), breach of the duty of commercial reasonableness based on HCOB and/or Promontoria's[4] 2019 auction of the policies (count V), civil conspiracy (count VI), and an accounting (count VII).

---

[4] The complaint alleges that "[a]ssuming HSH Nordbank had not disposed of the Collateral to itself in 2013 and assuming HCOB retained rights to dispose of the Collateral after the 2018 Portfolio Transaction, HCOB was obligated to dispose of the Collateral in a commercially reasonable manner," but, apparently in the alternative, that "[a]ssuming Promontoria Holding acquired any rights in the Collateral, it was obligated to dispose of it in a commercially reasonable manner" (**Complaint**, ¶¶ 167-68).

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**       **Page 5 of 18**
**Motion No.  002**

On June 5, 2023, Defendants moved to dismiss the complaint pursuant to CPLR 3211(a)(1), (5), (7), and (8). On September 12, 2023, the court held oral argument. At oral argument, the court dismissed the third, sixth, and seventh causes of action, denied dismissal of the first cause of action, and reserved decision on the remainder.

## DISCUSSION

On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see also Chapman, Spira & Carson, LLC v Helix BioPharma Corp.*, 115 AD3d 526, 527 [1st Dept 2014]). On a motion to dismiss under CPLR 3211(a)(1), "dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Leon*, 84 NY2d at 88; *Chen v Romona Keveza Collection LLC*, 208 AD3d 152, 157 [1st Dept 2022]).

1. Breach of Duty of Commercial Reasonableness – Avon Arbitration Award (HCOB)

The court denies dismissal of the second cause of action for breach of the duty of commercial reasonableness based on the allegedly improper disposition of the Avon arbitration award. Under UCC 9-610(a)-(b), "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing" but "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable" (*TAP Holdings, LLC v Orix Finance Corp.*, 45 Misc3d 1217(A), *16 [Sup Ct, NY County Nov 7, 2014]; *HSBC Bank USA, Nat. Ass'n v Amagli*, 18 Misc3d 139(A), *1 [App Term

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET**                    **Page 6 of 18**
**AL**
**Motion No.  002**

[* 6]                                                          6 of 18

2nd and 11th Dist. Feb 26, 2008]; *North Hill Funding of New York, LLC v Maiden & Madison Holdings, LLC*, 131 AD3d 836, 838 [1st Dept 2015]).

Here, Defendants argue that the duty of commercial reasonableness does not apply to the Avon arbitration award because HCOB did not dispose of collateral. Rather, HCOB merely failed to pursue the judgment and "record[ed] the award as an 'asset' in [its] financial statements" (Opening Memo., NYSCEF Doc. No. 20, p. 10 [citing Complaint, ¶¶ 138-39]).

The court rejects this argument. While UCC 9-610(a) refers to a secured party's right to "sell" or "lease" collateral after a default, the section also refers to the secured party's right to "**otherwise dispose** of any or all of the collateral" (UCC 9-610[a] [emphasis added]). New York courts have held that non-sale dispositions such as abandoning collateral may amount to dispositions of collateral subject to Article 9 of the UCC (*see Marine Midland Bank v CMR Industries, Inc.*, 159 AD2d 94, 107 [2d Dept 1990] [finding outstanding issues of fact as to whether disposition was commercially reasonable where defendants contended collateral was "worth approximately $99,450 and that the plaintiff or the SBA should have sold it rather than abandoning it," but the plaintiff argued "that the collateral was uniformly old and in poor condition and that the cost of removal would have exceeded its resale value"][5]; *see also Bank of China v Chan*, 937 F2d 780, 784, 787 [2d Cir 1991] [finding that bank owed duty to "preserve the value of the accounts receivable by drawing down the master letters of credit when the shipping documents were properly presented to it" and that Chan raised an issue of fact "as to the commercial reasonableness of the Bank's handling of the company's accounts receivable"]).

---

[5] The court notes that, while *Marine Midland Bank* involved a defense under UCC 9-504 (*id.* at 103), it is still applicable here because UCC 9-504 was the previous iteration of UCC 9-610 (*see* UCC 9-610, Comment 1 ("Source. Former Section 9-504(1), (3)")).

**153100/2023  LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**
**Motion No. 002**

**Page 7 of 18**

Courts outside New York, that have interpreted the phrase "otherwise dispose" under Article 9 of the UCC, have found that the inclusion of the term "disposition" separate from the term "sale" indicates that a "disposition of collateral need not necessarily be in the form of a sale" (*Williams v Regency Financial Corp.*, 309 F3d 1045, 1048-49 [8th Cir 2002], *citing In re Estate of Rothko*, 84 Misc2d 830, 864 [Surrogate's Ct, NY County Dec 18, 1975] ["The phrase 'other disposition' implies the parting with, alienation or giving up property . . . and were intended to include conveyances other than sales"]; *see also In re Godfrey*, 557 BR 469, 475 [ND W Va Sept 12, 2016] ["Many courts have considered the definition of 'disposition' under Article 9, and concluded that it encompasses various types of permanent transfers of possession."]).

Therefore, while HSH allegedly recording the Avon arbitration award as an asset may not have been a "sale," Plaintiff has sufficiently alleged that HSH executed an "other disposition" of the collateral. Plaintiff has alleged that the "**Trust**" held the breach of contract claim against Avon and that "HSH Nordbank pursued the claim, **through the Trust**, against Avon" (Complaint, ¶¶ 135-37 [emphasis added]). Ultimately, "the **Trust** was awarded more than $86M at arbitration in 2016" but HSH allegedly "took no steps to collect the award" (*id.*, ¶ 71 [emphasis added]). Subsequently, HSH "recorded this award as an asset in its financial statements" (*id.*, ¶ 139). Even though HSH did not "sell" the Avon award, the complaint alleges that HSH abandoned the pursuit of the judgment and effected a permanent transfer of the Avon award from the trust to itself, by recording it as an asset. As such, there is at least an issue of fact as to whether HSH "disposed" of the award.

In addition, Plaintiff's allegations that HSH disposed of the Avon arbitration award in a commercially unreasonable manner are sufficient to survive this motion. UCC 9-627 defines a "commercially reasonable disposition" as one made "(1) in the usual manner on any recognized

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET**                   **Page 8 of 18**
**AL**
**Motion No.  002**

[* 8]                                                8 of 18

market; (2) at the price current in any recognized market at the time of the disposition; **or** (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition" (UCC 9-627(b); *Atlas MF Mezzanine Borrower, LLC v Macquarie Texas Loan Holder LLC*, 174 AD3d 150, 163 [1st Dept 2019] [emphasis added] [internal quotation marks omitted]). The secured creditor ultimately has the "burden of establishing the commercial reasonableness of every aspect of the disposition of the collateral" (*General Elec. Credit Corp. v Durante Bros. & Sons, Inc.*, 79 AD2d 509, 510 [1st Dept 1980]; *Highland CDO Opportunity Master Fund, L.P. v Citibank, N.A.*, 2016 WL 1267781, *18 [SDNY Mar 30, 2016]). The commercial reasonableness of a disposition of collateral is generally an issue of fact that the court cannot decide at the motion to dismiss stage (*Atlas*, 174 AD3d at 165; *see also NatWest Bank N.A. v Grauberd*, 228 AD2d 337, 337 [1st Dept 1996] [finding that summary judgment should have been denied because there were triable issues of fact "as to the commercial reasonableness of plaintiff bank's conduct regarding the preservation of its collateral"]).

Here, the complaint adequately alleges that HSH's disposition of the Avon award was commercially unreasonable. Plaintiff alleges that HSH improperly abandoned any attempt to collect on the Avon award, but still recorded the award as an asset on its own financial statements (Complaint, ¶¶ 71, 138-39). In response, Defendants argue that HCOB may never be able to recover the judgment from Avon given its financial distress and that an unsuccessful pursuit of the award would have simply increased the balance of the loan (Reply in Further Support of Motion, NYSCEF Doc. No. 46, p. 8). While Defendants may succeed at summary judgment or at trial with this argument, it is not sufficient to succeed at this stage (*see Weinsten v Fleet Factors Corp.*, 210 AD2d 74, 74 [1st Dept 1994] ["issues of fact whether defendant acted in a commercially

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**
**Motion No.  002**

**Page 9 of 18**

9 of 18

reasonable manner in disposing of certain assets of the debtor"]; *cf. CCO Condo Portfolio (AZ) Junior Mezzanine, LLC v Feldman*, 2022 WL 3867910, *6 [SDNY Aug 30, 2022]).

The Second Department's decision in *Marine Midland Bank v CMR Industries* (159 AD2d 94 [1st Dept 1990]) (*supra*, p. 7*)*, is directly applicable. There, the court found that there were triable issues of fact where the defendants contended "the plaintiff or the SBA should have sold the collateral rather than abandoning it" (*id.* at 107). Just as in *Marine Midland*, the court cannot determine at this stage whether it was commercially reasonable for HSH to decline to pursue an $86 million award. Therefore, the court denies the motion to dismiss the UCC 9-610 claim.

The court also rejects Defendants' argument that HCOB had no duty to apply the Avon award to Plaintiff's loan balance. The complaint alleges that HSH violated UCC 9-615(c) through recording the award as its own asset and failing to credit the award against the loan balance (Complaint, ¶¶ 139-40). Pursuant to UCC 9-615(c), a secured party "need not apply or pay over for application noncash proceeds of disposition under Section 9-610 unless the failure to do so would be commercially unreasonable" (UCC 9-615[c]). Defendants argue, based on comment 3 to UCC 9-615(c), that HCOB had no duty to apply the Avon award to the loan balance because an arbitration award is not a type of noncash proceeds that HCOB generates in the ordinary course of business (Opening Memo., p. 10). In response, Plaintiff asserts that Defendants have misread comment 3 and that there is no such requirement that the proceeds be the type generated in the ordinary course of business (Opposition, NYSCEF Doc. No. 40, pp. 16-17). Plaintiff is correct.

Comment 3 provides an "Example" of the application of subsection (c), in which a secured party takes possession of an automobile following a default on an automobile loan (UCC 9-615[c], Comment 3). After selling the automobile on credit, the secured party is left with chattel paper that it could potentially credit against the defaulting debtor's debt (*id.*). The comment explains that the

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**                                            **Page 10 of 18**
**Motion No.  002**

[* 10]                                                                  10 of 18

secured creditor is required to "apply the value of the chattel paper to the original debtor's secured obligation" under UCC 9-615(c) because the chattel paper is the type of noncash proceeds that the secured creditor "regularly generates in the ordinary course of its financing business" (*id.*). Contrary to Defendants' argument, this comment does not resolve whether HSH violated UCC 9-615(c) through failing to apply the Avon award to the loan. While the comment provides an "example" of when failure to apply noncash proceeds would be unreasonable, it does not remotely suggest that this example is exclusive and that noncash proceeds **must** be generated in the ordinary course of business for UCC 9-615(c)'s reasonableness requirement to apply.

Therefore, regardless of whether awards such as the Avon award are generated in the ordinary course of business, the court is left to apply the standard UCC 9-627 analysis in determining if the failure to apply the noncash proceeds to the loan, while simultaneously recording the award as an asset, was commercially unreasonable. As with HSH's failure to pursue the Avon award and subsequent recording of the award as an asset, Defendants have simply not met their burden to establish that the failure to apply the award to Plaintiff's loan was commercially reasonable. Therefore, the court denies dismissal of this cause of action.

2. Breach of Contract (HCOB)

The court denies Defendants' motion to dismiss the fourth cause of action for breach of contract. To state a cause of action for breach of contract, a plaintiff must allege "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages" (*Second Source Funding, LLC v Yellowstone Capital, LLC*, 144 AD3d 445, 445-46 [1st Dept 2016]; *Chappo & Co., Inc. v Ion Geophysical Corp.*, 83 AD3d 499, 500 [1st Dept 2011]). However, a breach of contract claim should not be dismissed pre-answer where the contract is ambiguous (*Almah LLC v AIG Empl. Servs., Inc.*, 157 AD3d 416, 416 [1st Dept 2018]). A contract

**153100/2023 LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**
**Motion No. 002**

**Page 11 of 18**

11 of 18

is ambiguous if the provisions "are reasonably or fairly susceptible of different interpretations" (*id.* [internal quotation marks and citations omitted]; *LDIR, LLC v DB Structured Prods., Inc.*, 172 AD3d 1, 4 [1st Dept 2019]; *Ladder Capital Finance LLC v 1250 North SD Mezz LLC*, 211 AD3d 608, 608 [1st Dept 2022] [holding that lower court properly denied motion to dismiss where plaintiff's interpretation of the contract was reasonable, but defendants' interpretation was "also reasonable"]).

Here, Plaintiff alleges that HSH/HCOB breached the contract by purportedly selling the collateral to Promontoria, despite Promontoria not being a qualified purchasing lender under the LSA, and subsequently failing to turn the collateral over to LIFE despite no longer having any rights in the collateral (Complaint, ¶¶ 156-60). Defendants argue that this cause of action should be dismissed because HCOB did not actually sell the collateral to Promontoria, but rather simply assigned an economic participation to Promontoria (Opening Memo., p. 20). The court denies dismissal because provisions of the LSPA with Promontoria conflict as to whether or not there was an actual sale of the collateral. Defendants are correct that section 11.14(b) of the LSA permitted the lender to sell "**participating interests** in the Note . . . without the consent of, or notice to, the Borrower and [that] the grant of such participation shall not relieve such Lender of its obligations" (LSA, § 11.14[b] [emphasis added]). Further, the LSPA that effectuated the alleged sale between HSH and Promontoria stated that under the anticipated sub-participation agreement, "commercial title" to portfolio items would pass to the purchaser or assignee, but the seller would "retain legal title . . . to the Portfolio Items" (LSPA, § 4.7[a][ii]). This suggests that Defendants are correct that the transaction was not a sale of the collateral and that, therefore, the transaction did not breach the LSA.

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**                    **Page 12 of 18**
**Motion No.  002**

12 of 18

However, other documentary evidence suggests that the transfer of interest was, indeed, a sale. Section 1.1 of the LSPA defines the "Portfolio Items" at issue as "**All** rights, title, interest and benefit in and to . . . all present or future, conditional or unconditional receivables, rights . . . ancillary rights, claims, contractual undertakings and contractual and quasi-contractual obligations" (LSPA, § 1.1). Further, the HSH supervisory board resolution attached to the LSPA states that the board is resolving to approve a "**sale** of a loan portfolio" (HSH Nordbank Supervisory Board Resolution, § 1.a [emphasis added]). Additionally, the Promontoria management board resolution attached to the LSPA states that it is "intended that the Company enters [sic] into a loan sale and purchase agreement (the LSPA) with respect to the **sale** and **purchase** of certain loan portfolio items by the Company from HSH Nordbank AG" (Promontoria Resolution, § 1.1.1 [emphasis added]).

Thus, there is a question of fact whether the transfer from HSH to Promontoria of the collateral was a transfer of only commercial title, or, whether that transfer was, in fact, a sale of all rights associated with the collateral. Therefore, the court cannot determine at this juncture if HSH breached the LSA through entering into the LSPA with Promontoria. The court, therefore, denies the motion to dismiss the fourth cause of action.

3. Breach of Duty of Commercial Reasonableness – 2019 Sale (HCOB and Promontoria)

At oral argument, the court reserved decision on the fifth cause of action for breach of the duty of commercial reasonableness because of Promontoria's challenge to personal jurisdiction. The court rejects this challenge because there is personal jurisdiction over Promontoria. A New York court may not exercise personal jurisdiction over a non-domiciliary unless "the action is permissible under New York's long-arm statute, and the exercise of jurisdiction comports with due

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**
**Motion No.  002**

**Page 13 of 18**

[* 13]

13 of 18

process" (*English v Avon Products, Inc.*, 206 AD3d 404, 405 [1st Dept 2022]). Plaintiff has asserted that the court has personal jurisdiction over Promontoria pursuant to CPLR 302(a)(1).

Under CPLR 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary where the party, in person or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state" (CPLR 302[a][1]; *In re Estate of Stettiner*, 148 AD3d 184, 192 [1st Dept 2017] [finding that the court acquired personal jurisdiction over one party because of its agreement with a different party to "act as its agent to sell [a] painting in New York"]). Determining whether long-arm jurisdiction exists pursuant to CPLR 302(a)(1) is a "two-pronged jurisdictional inquiry" in which the court first decides "whether defendant conducted sufficient activities to have transacted business within the state" and then decides "whether plaintiff's claims arise from the transactions" (*English*, 206 AD3d at 406). For the court to have personal jurisdiction under CPLR 302(a)(1), the plaintiff's claims "must have an articulable nexus with the defendant's transactions within [the] state" (*id.* [internal quotation marks and citation omitted]; *4069 Rosen Assoc., LLC v Tournamentone Corp.*, 206 AD3d 464, 465 [1st Dept 2022] [finding personal jurisdiction under CPLR 302(a)(1) where defendant's "New York activities were purposeful and substantially related to plaintiffs' claims"]; *Great Lakes Insurance SE v American Steamship Owners Mutual Protection and Indemnity Association Inc.*, 214 AD3d 593, 594 [1st Dept 2023] [finding personal jurisdiction under CPLR 302(a)(1) where the complaint alleged that the individual defendants were the "primary actors with respect to the transaction[] at issue"]).

Here, the court has personal jurisdiction over Promontoria pursuant to CPLR 302(a)(1). The complaint alleges that Promontoria "participat[ed] in the sales and marketing process with [investment bank] Houlihan Lokey and its personnel **in New York**" (Complaint, ¶ 92 [emphasis added]). Even if Promontoria did not allegedly take action itself **in New York**, Promontoria did

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**                **Page 14 of 18**
**Motion No.  002**

14 of 18

ultimately sign the LSPA and allegedly acted through Houlihan Lokey employees in New York. This is sufficient to confer personal jurisdiction under CPLR 302(a)(1) (*see Front, Inc. v Khalil*, 103 AD3d 481, 482 [1st Dept 2013] [finding personal jurisdiction under CPLR 302(a)(1) where the allegations were sufficient to establish that particular defendants "transacted business in New York, through [a different defendant] as their agent"]; *RP Business Marketing, Inc. v Timlin Industries, Inc.*, 67 Misc3d 1205(A), *5 [Sup Ct, NY County Apr 10, 2020] [finding long arm jurisdiction where plaintiff made a prima facie showing that the defendants "engaged in a sustained and substantial transaction of business with [] a New York business"]).

Additionally, the court's exercise of personal jurisdiction over Promontoria would comport with due process. Due process requires both that the defendant have "minimum contacts with the forum state such that the defendant should reasonably anticipate being haled into court there" and that "the prospect of having to defend a suit in New York comports with traditional notions of fair play and substantial justice" (*State v Vayu, Inc.*, 39 NY3d 330, 337 [2023]; *English v Avon Products*, 206 AD3d 404, 406-07 [1st Dept 2022] [internal citations and quotation marks omitted]). Minimum contacts exist where the court finds "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protection of its laws" (*Wilson v Dantas*, 128 AD3d 176, 182 [1st Dept 2015] [citations and internal quotation marks omitted]; *Al Rushaid v Pictet & Cie*, 28 NY3d 316, 331 [2016]; *see also Clingerman v Ali*, 212 AD3d 572, 572 [1st Dept 2023]). Promontoria has sufficient minimum contacts with the forum through allegedly participating in a sales and marketing process with Houlihan Lokey—an investment bank with offices and personnel in New York and through employing attorneys based in New York from the firm Schulte Roth & Zabel LLP (Complaint, ¶¶ 92, 99). Thus, Promontoria purposely availed itself of this forum.

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**                **Page 15 of 18**
**Motion No.  002**

15 of 18

Further, the court's exercise of jurisdiction over Promontoria would comport with traditional notions of fair play and substantial justice. In order to determine if the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice, courts will assess: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies" (*Al Rushaid*, 28 NY3d at 331; *In re Renren, Inc. v. XXX*, 67 Misc3d 1219(A), 15 [Sup Ct, NY County May 20, 2020]). It is the defendant's burden to establish that jurisdiction would be unreasonable under this prong (*id.*).

Here, Promontoria has failed to address this aspect of the due process analysis at all and has, therefore, failed to meet this burden. Regardless, any burden to Promontoria would be minimal measured against this forum's significant interest in having this dispute adjudicated here. While Promontoria is a Dutch domiciliary, the burden of taking part in this matter is reduced with the advent of remote proceedings (*see Al Rushaid*, 28 NY3d at 331 ["Here, while the parties are foreign nationals, the burden of litigation in New York is reduced by modern communication and transportation"] [internal quotation marks and citation omitted]). Further, New York has a substantial interest in resolving the claim against Promontoria related to the sale of the collateral where Promontoria allegedly hired New York investment bankers and New York lawyers from Schulte Roth & Zabel LLP, who allegedly brokered the transaction. Therefore, the court denies dismissal of the cause of action for breach of the duty of commercial reasonableness against Promontoria on the basis of lack of personal jurisdiction.

Additionally, the court denies the motion to dismiss the fifth cause of action against Promontoria and HCOB for failure to state a cause of action. The fifth cause of action alleges

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**
**Motion No.  002**

**Page 16 of 18**

16 of 18

breach of the duty of commercial reasonableness against both Promontoria and HCOB based on the sale of the collateral in 2019. In particular, the complaint alleges that Promontoria failed to disclose details to LIFE about the prior loan sale or the upcoming sale of the collateral and that "HCOB and/or Promontoria Holding also . . . accepted a sales price below what LIFE was willing to bid" (*id.*, ¶¶ 173-74). Defendants argue that the cause of action should be dismissed because Plaintiff's mere disappointment with the price at which Defendants sold the collateral at auction is not a basis for showing that the sale was commercially unreasonable. Rather, according to Defendants, the sale price must "shock the conscience" to support a claim that the sale was commercially unreasonable (Opening Memo., pp. 11-12).

However, as Judge Marrero already found in the first federal action, whether or not a disposition of collateral was commercially reasonable is a "necessarily fact intensive" question, and the dispute over the reasonableness of the sales price is "not [] appropriate to resolve [] at this stage of the litigation" (*Life Insurance Fund Elite LLC v Hamburg Commercial Bank AG*, 545 F Supp 3d 86, 91 [SDNY 2021] [holding that the fund had adequately pled breach of the duty of commercial reasonableness through allegations of "the value of collateral compared to the apparent sale price and the lack of notice to interested parties"]; *cf. Atlas MF Mezzanine Borrower LLC v Macquarie Texas Loan Holder LLC*, 199 AD3d 439, 440 [1st Dept 2021] [finding **after trial** that the evidence did not "support a finding that the price received for the properties at auction was 'so inadequate as to shock the court's conscience'"] [internal citation omitted]). UCC 9-610 requires that "[e]very aspect of a disposition of collateral . . . be commercially reasonable," and UCC 9-627 states that part of the analysis of commercial reasonableness of a disposition of collateral is the "price current in any recognized market at the time of the disposition." Plaintiff has alleged that as a result of not being allowed to bid, the ultimate sale price was lower than it

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET**                     **Page 17 of 18**
**AL**
**Motion No.  002**

[* 17]                                                                        17 of 18

would have been if Plaintiff could have bid. Whether that price was so low as to "shock the conscience" is not for the court to decide at this stage.

The court has considered the parties' remaining contentions and finds them unavailing. Accordingly, it is

**ORDERED** that the third cause of action (breach of fiduciary duty against HCOB), sixth cause of action (civil conspiracy against Cerberus European), and seventh cause of action (demand for an accounting against HCOB) are dismissed for the reasons stated on the record at oral argument on September 12, 2023; and it is further

**ORDERED** that Defendants' motion to dismiss the first cause of action (2013 breach of duty of commercial reasonableness against HCOB) is denied for the reasons stated on the record at oral argument on September 12, 2023; and it is further

**ORDERED** that the remainder of Defendants' motion to dismiss is denied as expressed in this decision and order; and it is further

**ORDERED** that Defendants must answer the complaint within 20 days of the efiled date of this decision and order.

20240103124029MACRANE23910024608B0479C8DAE6E8D673DAD6F

<u>01/03/2024</u>
**DATE**

**MELISSA A. CRANE, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**153100/2023   LIFE INSURANCE FUND ELITE, LLC. vs. HAMBURG COMMERCIAL BANK AG ET AL**
**Motion No. 002**

Page 18 of 18

18 of 18